D'ALBERTI, The (DOMINY v.). See Case No. 3,977.

---

## Case No. 3,540.

### Ex parte DALBY.

### In re GRIFFITHS.

[1 Lowell, 431; [1] 3 N. B. R. 731 (Quarto, 179).]

District Court, D. Massachusetts. March Term, 1870.

BANKRUPTCY—RIGHTS OF ASSIGNEE—UNRECORDED CHATTEL MORTGAGE—PROOFS FOR DEFICIENCY.

1. The assignee in bankruptcy stands in the place of the bankrupt, and takes only the property which he had, subject to all valid claims, liens, and equities.

[Cited in Bromley v. Smith, Case No. 1,922; Coggeshall v. Potter, Id. 2,955; Casey v. La Societe de Credit Mobilier, Id. 2,496; Johnson v. Patterson, Id. 7,403; Re McKenna, 9 Fed. 34. Approved in Potter v. Coggeshall, Case No. 11,322.]

2. In the absence of actual fraud, a mortgage of chattels made by a resident of Massachusetts is good against the assignee in bankruptcy, though it had not been duly recorded at the date of the bankruptcy.

[Cited in Harvey v. Crane, Case No. 6,178; Re Oliver, Id. 10,492.]

3. If a mortgage on the bankrupt's property is held as security for several notes and indorsements given by the mortgagee for the accommodation of the bankrupt, and the security is insufficient, the several holders of the paper are to have a pro rata share of the proceeds of the mortgaged property; and may prove against the estate for the balance of their respective debts after crediting their shares of the security.

In July, 1867, Griffiths lived and had his principal place of business in Boston, and had a factory in the adjoining city of Roxbury, which has since been annexed to Boston. In that month he gave the petitioner Dalby a mortgage upon the fixtures and tools in his factory, which recited that Dalby had indorsed notes for him on a promise of security; and the condition was, that Griffiths, his executors, administrators, and assigns shall, at or before the expiration of nine months from the date of the mortgage, pay certain promissory notes, and save Dalby harmless from the payment of the same or any part thereof, "said certain notes being described as follows, to wit;" one note is then described, and the condition proceeds, "and any and all other notes given or indorsed by said Dalby for the accommodation of the said Charles W. Griffiths & Co. during the pendency of this deed," then, &c. The mortgage was recorded in Roxbury, whereas by law it should have been recorded in Boston, and no possession was taken under it. The note described in the deed, and all other notes given or indorsed within nine months after the date of the deed, were paid; but the parties continued in the same course of dealing, and there were outstanding at the time of the bankruptcy of Griffiths in January, 1869, notes of the like description to a greater amount than the value of the mortgaged chattels. The property was

---

[1] [Reported by Hon. John Lowell. LL. D., District Judge, and here reprinted by permission.]

sold by the assignees, by consent, and the mortgagee petitioned for the proceeds. [The assignees contend that the deed itself does not purport to secure any notes not made or indorsed within nine months of its date, and that it is not valid against them for want of due record.][2]

T. H. Sweetser and T. F. Nutter, for assignees.

G. A. Somerby and T. S. Dame, for mortgagee.

LOWELL, District Judge. The deed is obscure. What the "pendency of the deed" is, may well be a question. It can hardly mean the nine months, because that is merely the time limited for payment of certain notes which purport to be described; and though only one is in fact described, the facts show that there were others then existing, to which the security was certainly intended to apply. After the nine months the deed would still be pending if there were a breach. The most favorable construction that I can give for the assignees is this, that so long as the mortgage remained a valid and existing lien upon the property, it should secure all notes of the kind mentioned in it. Now, there was no time up to the date of the bankruptcy when notes were not outstanding; no time when the mortgagor could have called upon the mortgagee to cancel his security on the ground that he was no longer liable as indorser for accommodation of the mortgagor; the course of dealing was continuous, and the proceeds of new notes were used, in part, to take up the old notes. But I am much inclined to think that the true reading of this deed is, that it should secure all notes of the kind mentioned until it should be given up, or in some way cancelled or abrogated. In either view, it secures the notes mentioned in the agreed statement.

The important question of law remains to be considered, whether such a mortgage, not duly recorded, is good against the assignee in bankruptcy. Independently of statute, such a mortgage, given for value and in good faith, may be valid without change of possession: Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 449; De Wolf v. Harris [Case No. 4,221]; Briggs v. Parkman, 2 Metc. [Mass.] 263; notes to Twyne's Case, 1 Smith, Lead. Cas. 1. In Massachusetts, since 1832, the statute has required possession to be taken and kept by the mortgagee, or a due record of the mortgage; and if neither is done, it shall not be valid "against any other person than the parties thereto:" Gen. St. c. 151, § 1. The supreme judicial court of the commonwealth have construed this language strictly, and have held that actual notice of the mortgage would not defeat the title of a purchaser. Travis v. Bishop, 13 Metc. 304. And they had before intimated that

probably an attaching creditor, with actual notice, would hold his attachment against the mortgage. Denny v. Lincoln, 13 Metc. 200. From these decisions and intimations the step was easy to a ruling that an assignee in insolvency had a better title than such a mortgagee. Bingham v. Jordan, 1 Allen, 373. But before this last case was decided, Judge Story had held a different rule in Winsor v. M'Clellan [Case No. 17,887]. His reasoning is that the assignee, in the absence of fraud in fact, represents the bankrupt, and takes only what he had, subject to all incumbrances and liens which are valid against him, and that he is therefore fairly one of the parties within the statute. This decision does not appear to have been brought to the notice of the court in the argument of Bingham v. Jordan; but the two cases are not necessarily opposed, because by the insolvent law of the state the assignee takes not only all the debtor's property, but all that could be taken on execution against him at the time of the insolvency; and under the earlier decisions and intimations, such chattels could have been taken by an execution creditor even though he had actual notice of the mortgage. There was no such language in the bankrupt act of 1841 [5 Stat. 440], nor is there in that of 1867 [14 Stat. 517].

In the important and celebrated case of Mitford v. Mitford, 9 Ves. 87, on which Mr. Justice Story mainly relied in the decision I have cited, it was held by Sir William Grant that a chose in action of the wife of a bankrupt, not reduced into possession by him or his assignees before his death, survived to the wife. "Assignees in bankruptcy," said the learned master of the rolls, "take subject to whatever equity the bankrupt was liable to. They are not considered purchasers for valuable consideration in the proper sense of the words." He then cites Lord Hardwicke and Lord Thurlow as saying that an assignment by operation of law does nothing more than to place the assignee in the room of the husband. Mr. Christian, in his work on Bankruptcy (2d Ed., vol. 1, p. 490), criticises this opinion with some sharpness, and thinks the rule cannot be considered established until determined at law. It has since been so determined, in accordance with Sir W. Grant's decision. Sherrington v. Yates, 12 Mees. & W. 855.

The doctrine that an assignee in bankruptcy takes only the title of his assignor is now generally recognized. Thus it has been held in Massachusetts, that goods put into the hands of a trader for the very purpose of giving him a false credit will not pass to his assignee in insolvency. Audenried v. Betteley, 5 Allen, 382. And see Butler v. Breck, 7 Metc. [Mass.] 164; Stetson v. Gulliver, 2 Cush. 494; Clarke v. Minot, 4 Metc. [Mass.] 346. In the absence, therefore, of fraud in fact, of which the want of record may often be strong evidence, but which the agree-

---

[2] [From 3 N. B. R. 731 (Quarto, 179).]

ment of facts in this case disclaims, a mortgage which is good against the bankrupt is good against his assignee. The rule would be different in those states in which the continued possession of the mortgagor is held conclusive of fraud. This is all the uniformity which the bankrupt act can have in its operation on titles created by the diverse laws of the states.

The decision of Mr. Justice Story ought to be followed here, even if I were not agreed with him in opinion, because the bankrupt act of 1867 does not differ specifically in the granting part from that of 1841. By the fourteenth section, it gives to the assignee all the property and estate of the bankrupt, with certain exceptions, and authorizes him to redeem or discharge any mortgage, pledge, or lien, &c. [It nowhere grants any goods that are not the bankrupt's, even if they should be in his possession, and it preserves all liens except attachments.][2] Much stress was laid upon the fact that in the same section it is provided, that no mortgage of any vessel, or of any other goods or chattels, made as security for any debt or debts, in good faith and for present considerations, and otherwise valid, and duly recorded pursuant to any statute of the United States or of any state, shall be invalidated or affected "hereby." But it does not seem to me that this proviso can enlarge the rights or title of the assignee, or can make a mortgage invalid against him which but for the proviso would have been valid. Suppose possession to have been taken and retained by the mortgagee, no record would be necessary; and the mortgagee's title would be good at common law and by the statute, but the proviso, in terms, only saves mortgages that have been duly recorded, and not those which need no record. By the decision of Judge Story, this mortgage need not be recorded as against the assignee in bankruptcy, who is one of the parties thereto, in the sense of the law. The proviso appears to have been inserted out of greater caution, lest it should be supposed that valid chattel mortgages should be affected by the assignment, and not with any view of construing the state laws which concern the recording of mortgages; and so if the mortgage be one that requires no record, as if it be executed in a state having no statute upon the subject, or if, as in this case, record is not required between the parties, the proviso will not defeat it. [Take the very case of a mortgage of a vessel, mentioned in the act, such a mortgage is good without record against persons having notice of it; and I suppose it is not to be doubted that an assignee in bankruptcy takes as a purchaser with notices of all equities.][3]

It was said at the argument that the notes indorsed by the mortgagee were more in amount than the whole proceeds, and that

---

[3] [From 3 N. B. R. 731 (Quarto, 179).]

the mortgagee had not in fact paid them. If this is so, the order should be that the assignees distribute the proceeds of sale of the mortgaged property pro rata among the bona fide holders of the notes secured thereby, and that these holders have leave to prove for the balance only of their respective debts, after crediting the payments [against the general assets of the estate]. And even if there be enough to pay the secured debts in full, the assignees have a right to see that the money is so applied.

Petition granted.