JAMES DUGAN *vs.* DANIEL A. NICHOLS.

Essex.   November 10, 1876; April 2. — July 24, 1878.

Evidence that a purchaser paid the price and took a bill of sale of certain goods pointed out to him by the seller, which were separate and apart from the other goods of the seller, will warrant a jury in finding that the purchaser acquired title to the goods as against the seller, in whose possession they remained.

An assignee in bankruptcy has no better title than the bankrupt, except in goods conveyed in fraud of creditors.

REPLEVIN of thirteen barrels of oil.   Writ dated July 10, 1874. At the trial in the Superior Court, at December term 1875, before *Lord*, J., the plaintiff offered evidence tending to prove that he purchased the oil of the firm of Shaw & Bruce, of which the defendant is the assignee in bankruptcy, under the following circumstances :

On January 3, 1874, Shaw called upon the plaintiff, and asked him to purchase some oil and some splits, saying that the firm had found it necessary to go into bankruptcy, and had consulted

counsel on the subject; that it was necessary to raise money to pay the expenses incident to the commencement of proceedings, and that they had been advised that they could properly sell some of their property for that purpose. The plaintiff at first declined, but, being assured that counsel had said it was all right, provided they sold for fair prices, said he would see the counsel on the subject, and asked Shaw where the goods were. Shaw replied that he had brought the splits with him and that they were then in the plaintiff's basement, but that the oil was at the firm's shop. Shaw and the plaintiff thereupon proceeded to the counsel's office, and on the way, in passing the shop, Shaw, pointing to the barrels of oil, said, "That is the oil." The oil was in a shed separate from any other property, where it remained, with no agreement to pay storage by the plaintiff, until it was replevied. Counsel informed the plaintiff that he might safely purchase and pay for the goods under the circumstances, and thereupon a bill of sale of the thirteen barrels of oil and of the splits was written and given by Shaw to the plaintiff, who thereupon paid him a fair market price for the same. Upon cross-examination, the plaintiff testified that he had not agreed to purchase, nor had the bargain been consummated, until after he had talked with the counsel.

Shaw & Bruce filed their petition in bankruptcy on January 6, 1874, and the defendant was duly chosen assignee on February 16, 1874. The plaintiff also offered evidence tending to prove a demand upon the defendant before the date of the writ.

The judge ruled that the evidence was not sufficient to prove a delivery of the oil to enable the plaintiff to maintain the action; ordered a verdict for the defendant, and reported the case for the consideration of this court. If, upon the facts and evidence, the plaintiff was entitled to go to the jury upon the question of delivery, the verdict was to be set aside and a new trial ordered; otherwise, judgment for the defendant.

The case was argued in November, 1876, by *S. B. Ives, Jr.*, for the plaintiff, and *C. Sewall*, for the defendant; and in April, 1878, in writing, by *S. B. Ives, Jr. & G. A. Goddard*, for the plaintiff, and *C. Sewall*, for the defendant.

MORTON, J. There was evidence in this case which would have justified the jury in finding, that, as between the parties to

the contract of sale, the property in the oil replevied passed to the plaintiff. By the delivery of the bill of sale and the payment of the price, the title passed, so that the oil was at the risk of the purchaser, and, if it had been destroyed, the loss would have fallen upon him. *Weld* v. *Came*, 98 Mass. 152. *Morse* v. *Sherman*, 106 Mass. 430. *Townsend* v. *Hargraves*, 118 Mass. 325. The title having passed to him, the purchaser could at any time have taken possession of the oil as against the sellers, and could maintain replevin against them.

The further question in the case is, whether he is entitled to possession as against the assignee of the sellers. It is not necessary to decide whether the plaintiff has a title which is good against subsequent innocent purchasers or attaching creditors of the sellers. An assignee in bankruptcy does not stand in the position of such purchaser or creditor. He takes the same interest in and title to the property which the bankrupt has. The law provides that the judge or register shall " assign and convey to the assignee all the estate, real and personal, of the bankrupt, with all his deeds, books and papers relating thereto, and such assignment shall relate back to the commencement of the proceedings in bankruptcy, and, by operation of law, shall vest the title to all such property and estate, both real and personal, in the assignee," with certain exceptions not material in this case. U. S. Rev. Sts. § 5044. It should be observed that the bankrupt law nowhere has the provision contained in the insolvent law of Massachusetts, that the assignment shall vest in the assignee all the property of the insolvent debtor, which he could have lawfully sold, or " which might have been taken on execution upon a judgment against him." Gen. Sts. *c.* 118, § 44.

In the recent case of *Donaldson* v. *Farwell*, 93 U. S. 631, it appeared that the bankrupt, before the commencement of proceedings, purchased goods of the defendant with the intention not to pay for them. After the commencement of proceedings, the defendant discovered the fraud and took possession of the goods, and the suit was brought by the assignee to recover their value. It was held that, as against the purchaser, the vendor had the right, if no innocent third person had acquired an interest in the goods, to disaffirm the sale and recover the goods; that the bankrupt had a defeasible title, and that only his defeasible

title passed to his assignee. The court put the decision upon the ground that, if the property has not been conveyed in fraud of creditors, the assignee has no greater interest in or better title to it than the bankrupt.

This is decisive of the case at bar. As we have said before, the evidence would justify the jury in finding that the title to the oil passed to the plaintiff, as between the parties. This being so, the bankrupts had no title at the commencement of the proceedings in bankruptcy, and no title vested in the defendant, their assignee. As against them, the plaintiff might take possession of the goods, if he could do so peaceably, or recover possession of them by a writ of replevin. *In re McKay*, 1 Lowell, 345. *In re Griffiths*, 1 Lowell, 431. *Goss* v. *Coffin*, 66 Maine, 432.                                   *New trial ordered.\**

---

\* A similar decision was made in Worcester, on the same day, in the case of JAMES D. GREEN *vs.* ALBERT D. HOLMES.

REPLEVIN of a horse, express wagon, safe, three show cases and a cigar case.

At the trial in the Superior Court, before *Pitman*, J., without a jury, it appeared that the plaintiff's brother, George D. Green, who was in the retail grocery business at Lancaster, owed the plaintiff in February, 1876, $400 for services as clerk in the store, and on February 11 sold the plaintiff the goods in question, and the plaintiff received them in payment of his claim and took a bill of sale; and that George D. Green went into bankruptcy in about two months after the sale, and the defendant was chosen assignee of his estate and took possession of the goods in question.

The evidence upon the question of delivery to the plaintiff was as follows : The plaintiff testified that after the bill of the articles was made out, his brother went to the back of the store in which they both were, and within about ten feet of the horse and wagon, which were standing outside in the usual place of waiting for goods, and, pointing to them, said, "These I hand over to you;" that he then stepped inside the store and pointed to the show cases and cigar case, and to the safe, and said that he handed them over to him, and then passed him the bill of sale. It also appeared that the cigar case was about two feet square and was upon the counter, with cigars in it; that the show cases were each six or seven feet long and two feet wide and from six to eight inches deep, and were also upon the counter, filled with goods, and that the safe weighed 1500 pounds.

George D. Green continued to carry on the business at the store, as formerly until his failure; and the plaintiff testified that, at the time of the sale, he gave him permission to use the articles till June 1, 1876, and that they were so used to the time of his failure in business.

---

Upon this evidence, the judge ruled that it appeared, as matter of law, that no sufficient delivery was made; and ordered judgment for the defendant. The plaintiff alleged exceptions.

*G. F. Verry* & *F. A. Gaskill,* for the plaintiff.

*H. E. Fales,* for the defendant.

By the Court.   This case is governed by *Dugan* v. *Nichols, supra.* There was sufficient evidence of delivery to be submitted to the jury.

*Exceptions sustained.*