CHATTANOOGA NAT. BANK v. ROME IRON CO. et al.

(Circuit Court, N. D. Georgia. May 30, 1900.)

No. 1,086.

1. BANKRUPTCY—PREFERENCES—RENEWAL OF PLEDGE.

A pledge of property to secure notes executed within four months prior to proceedings in bankruptcy against the pledgor is not voidable as an illegal preference under Bankr. Act 1898, where the notes so secured were renewals of prior notes also secured by a pledge of the same property; the original indebtedness having been created and the original pledge made prior to the four-months period.

2. PLEDGE—SUFFICIENCY OF DESCRIPTION OF PROPERTY.

A description of property pledged by an iron company as "equity in iron in yard #48, Rome, Ga.," is sufficient, as it renders the iron capable of ready identification, and indicates the nature of the pledgor's interest therein.

3. PLEADING—DEMURRER—CONSTRUCTION OF WRITING.

On demurrer to a bill seeking to enforce a pledge evidenced by a writing which is set out, the terms of such writing, if ambiguous, must be construed in accordance with the allegations of the bill.

4. PLEDGE—EQUITABLE LIEN—SUFFICIENCY OF CONTRACT

An indorsement on the back of notes that the equity of the maker in certain property, which is sufficiently described to render it capable of identification, is pledged as security for the payment of the notes, is sufficient to create an equitable lien in favor of the pledgee upon the pledgor's interest in the property, which, being a mere equity, was incapable of delivery.

5. EQUITABLE LIEN—SUIT TO ENFORCE—DEFENSES.

The right of a complainant to enforce a contract as one creating an equitable lien, where it is not claimed that such contract constitutes a legal mortgage, cannot be affected by his failure to record it as a mortgage, as required by the laws of the state to render it enforceable against creditors or purchasers without notice.

6. BANKRUPTCY—EQUITABLE LIENS ON ESTATE—TITLE OF TRUSTEE.

Except in cases affected by fraud or illegal preferences, a trustee in bankruptcy, under Bankr. Act 1898, takes only the interest of the bankrupt in the assets of the estate, and holds such assets subject to all valid claims, liens, and equities enforceable against the bankrupt.

In Equity. On demurrer to bill. See 99 Fed. 82.

King & Spalding and Fouche & Fouche, for complainant.
C. P. Goree, for defendant.
Dean & Dean, for trustee.

NEWMAN, District Judge. The Chattanooga National Bank, of Chattanooga, Tenn., brings its bill against the Rome Iron Company, a Georgia corporation, and Halstead Smith, as trustee in bankruptcy of the said Rome Iron Company. The facts stated in the bill are that on May 27, 1898, the iron company made and executed, for a valuable consideration, to the bank, its five promissory notes, each for the sum of $5,100 principal, dated at Chattanooga, Tenn., with legal interest from date, and attorney's fees if collected by an attorney by suit or otherwise. To secure the same the iron company executed the following contract on the back of the notes:

"The within note is secured by the pledge and deposit of the following securities, to wit: Equity in iron in yard #48, Rome, Ga. And the Chattanooga National Bank or assigns may, after the maturity of this note, sell the same at public or private sale, for cash or on time, as it or they deem best, without notice to other party, and appropriate proceeds to payment of said note; and, in the event of the above-named securities being more than the amount of this note, the same shall be held to cover any other of our indebtedness to the bank, if the latter shall so elect; and, should suit be brought on this paper, we agree to pay a reasonable attorney's fee and all costs.

"[Signed] The Rome Iron Co.,
"L. S. Colyar, Pres. Treas."

It is alleged in the bill that "yard #48, Rome, Ga.," referred to, was the yard of the American Pig-Iron Storage Warrant Company, and that the equity referred to was the equity of the Rome Iron Company, over and above the amount due on certain warrants issued by the American Pig-Iron Storage Warrant Company, and secured by said iron. The bill further alleges that the notes referred to were successively renewed as they fell due, each renewal being secured by the same pledge and deposit, until the 4th day of February, 1899. at which time the iron company gave to the bank, in renewal of its debt, five promissory notes, each for the sum of $5,100, each dated January 20, 1899, and due at 60 days, 90 days, 4, 5, and 6 months, from date, respectively, with legal interest and attorney's fees. These notes each had on them the same indorsement as to pledge of equity in iron in yard No. 48, Rome, Ga. It is then shown in the bill that on February 23, 1899, a petition in involuntary bankruptcy was filed in the district court for this district, by certain creditors, against the Rome Iron Company, seeking to have it adjudged a bankrupt, and that the proceedings usual in such cases were had, and on the 11th day of April, 1899, Halstead Smith, Esq., was duly appointed trustee in bankruptcy of the said Rome Iron Company, and, as trustee, has taken possession of all of its property, real, personal,

and mixed, including the equity and credits of the said Rome Iron Company, and including the equity of the Rome Iron Company in the iron in yard No. 48, heretofore referred to. It is further shown that Smith, as trustee, has been and is disposing of the iron, and paying off the warrants, and has $30,000, or other like large sum, in his hands, arising as the proceeds of the equity in the iron. It is then averred that the contract or pledge on the back of the notes creates an equitable lien and charge in its favor upon the equity in the iron and the proceeds thereof in the hands of the trustee, and that it is entitled to have the same turned over to it, to be applied to the payment of its debt, principal and interest. It is then charged that Smith, as trustee, refuses to recognize the pledge and lien of the bank; and after alleging that it has not proven its debt in bankruptcy, and has done nothing to relinquish its pledge or equitable lien, it prays for a decree that the Rome Iron Company is indebted to it in the sum of $25,500 principal, with interest and attorney's fees, and that the bank be decreed to have a valid pledge of, and equitable lien upon, the said equity in the said iron of the Rome Iron Company in yard No. 48, securing its debt aforesaid, and that it be decreed that the said sum in the hands of the trustee, derived from said equity, be subject to its equitable lien and pledge, and be not distributed to the creditors of the Rome Iron Company who have proven their debts. It prays for an injunction against Smith to enjoin him from disposing of the fund in his hands, and that it be paid over to the bank. This case is now here on a demurrer to the bill. The demurrer raises the question whether or not the bank has an equitable lien on the equity in this iron. The grounds of demurrer will not be considered in the order in which they are stated in the demurrer as filed, but in inverse order.

It is claimed that the pledge was made or attempted within four months next preceding the filing of the petition in bankruptcy, and that it does not appear that the same was made or attempted to be made for a present consideration. This ground of demurrer is sufficiently answered by the allegations of the bill which show that the notes dated January 20, 1899, were in renewal of notes which were originally made in May, 1898, and renewed from time to time until the present notes were given. The question raised in this case as to the record of renewed mortgages under the statutes of Georgia will be noticed hereafter.

The next ground of demurrer is that the language of this pledge contains no sufficient description of the property pledged. The description is, "Equity in iron in yard #48, Rome, Ga." It is not necessary that the property should be fully described. All that is necessary is that the language used should be sufficient to identify it. In referring to it as "equity in iron," etc., the meaning intended, clearly, is that some one else has a prior right, and that the pledgor only has an equity after satisfying some paramount lien or right. "Yard #48, Rome, Ga.," clearly means a yard in Rome, Ga., in which iron was stored, and that its number is 48. This renders its identification easy and simple, and altogether the description of the property or of the right in property pledged seems to be quite sufficient.

The next point raised by the demurrer is that the language used in this pledge indicates that something had been previously done. It is contended that the language, "The within note is secured by the pledge and deposit of the following securities, to wit," etc., indicates that something making this pledge effective had been, prior to this entry on the note, placed in the hands of the bank, and, as this had not been done, it was an incomplete and inchoate transaction. It is just as reasonable to suppose, even judging the meaning of this indorsement by its own terms, that it was used in the present tense, as in the past, and that it should be construed as if it said, "The within note is hereby secured," etc., as that it has the meaning claimed by defendant's counsel. But the case is now being heard on a demurrer to the bill, and the bill, in describing the notes, contains the following allegation:

"That to secure the same the said Rome Iron Company executed the following contract upon the back of said notes, in terms and figures as will be more fully set forth hereinafter, wherein and whereby it pledged and deposited as security for said notes all of its equity in the iron in yard No. 48," etc.

Another allegation is,

"The said notes being secured each by the same pledge of said equity in said iron in yard No. 48, Rome, Georgia. * * * A copy of each one of said notes, and of the said contract of pledge and deposit upon the back thereof, is hereto attached, and marked Exhibits A, B, C, D, and E, respectively."

Attached to the bill are copies of the notes, with the indorsement thereon which has been heretofore given in full. The bill clearly alleges, therefore, that this indorsement on the back of the notes is the pledge relied upon, and which complainant seeks to enforce.

The other two grounds of demurrer may be considered together. Each raises the question as to whether or not, there being no delivery of that which was sought to be pledged, and it being a mere equity, incapable of delivery, it could be the subject of a valid pledge. In 3 Pom. Eq. Jur. § 1235, the doctrine with reference to equitable liens is stated in this way:

"The doctrine may be stated, in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey, assign, or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands, not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or incumbrancers with notice. Under like circumstances a merely verbal agreement may create a similar lien upon personal property. The ultimate grounds and motives of this doctrine are explained in the preceding section, but the doctrine itself is clearly an application of the maxim, 'Equity regards as done that which ought to be done.' In order, however, that a lien may arise in pursuance of this doctrine, the agreement must deal with some particular property, either by identifying it, or by so describing it that it can be identified, and must indicate with sufficient clearness an intent that the property so described or rendered capable of identification is to be held, given, or transferred as security for the obligation."

This statement of the law is quoted in Walker v. Brown, 165 U. S. 654, 17 Sup. Ct. 453, 41 L. Ed. 865, with apparently full approval by the court.

Testing the case at bar by the foregoing authority, in order that a lien may arise, it is necessary: (1) "That the agreement must deal with some particular property, either by identifying it, or by so describing it that it can be identified." As has been stated, the reference to this property in the pledge on the back of these notes is clearly sufficient to render the property pledged capable of identification. (2) "Must indicate with sufficient clearness an intent that the property so described or rendered capable of identification is to be held, given, or transferred as security for the obligation." The clear purpose of this indorsement on these notes is to secure the notes by the equity remaining in the pledgor in the iron referred to. Both as to identification and as to purpose to secure, therefore, there seems to be ample compliance with the law on the subject as stated by the supreme court.

Two grounds not specifically set forth in the demurrer have been urged in argument. The first is the failure to record the instrument under section 2726 of the Code of Georgia, with reference to recording renewed mortgages. I need not go into the niceties of the questions argued at the bar concerning the record of mortgages and of renewed mortgages, respectively, in Georgia, because, in my opinion, it is not pertinent in this case. If this had been an instrument which could have been admitted to record as a mortgage, and was being enforced as such, it might be necessary to go into the meaning of that part of section 2726 referring to the record of renewed mortgages, and the effect of a failure to record against general creditors; but it is sought by this bill to set up this instrument, and enforce it as an equitable lien or mortgage. The necessity for any effort to set up an equitable lien is in cases where there is no formal mortgage which could be foreclosed and enforced in the ordinary way. The point made, therefore, that the failure to record this instrument is an obstacle to its enforcement as an equitable lien, is not tenable.

Since the argument of this case I have been handed by counsel for the trustee a recent decision by Judge Bellinger, of Oregon, in the case of In re J. S. Booth, 3 Am. Bankr. Rep. 574, 98 Fed. 975, in which it is said, without citing authority, that the trustee in bankruptcy stands in the position of an innocent purchaser without notice. If this is the law, it would seem to defeat this lien, because it seems entirely clear that an innocent purchaser from the Rome Iron Company, without notice of the pledge to the Chattanooga National Bank, would have obtained a good title; but I must, with the utmost respect, differ with Judge Bellinger as to his opinion of the position in this respect of a trustee in bankruptcy.

This question arose frequently under the bankrupt act of 1867. In Re Rockford, R. I. & St. L. R. Co., Fed. Cas. No. 11,978, it was held that assignees in bankruptcy stand no better than the bankrupts in respect to the assets, excepting in cases of fraud, or of attachments of less than four months' standing. In Ex parte Dalby, 1 Low. 431, Fed. Cas. No. 3,540, it was held that the assignee in bankruptcy stands in the place of the bankrupt, and takes only the property which he had, subject to all valid claims, liens, and equities. In Winsor v. McClellan, decided in the United States circuit court for the district of Massa-

chusetts in 1843, under the bankrupt act of 1841 (2 Story, 492, Fed. Cas. No. 17,887), in the opinion, by Circuit Justice Story, it is said:

"Now the principle has been long established that the assignee in bankruptcy does not stand in the position of a purchaser, nor even in so favorable a position as an individual creditor may stand. 2 Story, Eq. Jur. §§ 1228, 1229, 1411; Langton v. Horton, 1 Hare, 549, 563; Muir v. Schenck, 3 Hill, 228; Murray v. Lylburn, 2 Johns. Ch. 441, 443; Deac. Bankr. (Ed. 1827) pp. 320, 321, c. 10, § 3. The assignee in bankruptcy takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities which exist against the same in the hands of the bankrupt. This was clearly laid down by Lord Hardwicke in Brown v. Heathcote, 1 Atk. 160, 162, and has ever since been adhered to, not only in courts of equity, but also, as the case of Leslie v. Guthrie, 1 Bing. N. C. 697, abundantly shows, at law. But I need not dwell upon this point, as it comes very fully under consideration in the case of Rand v. Winslow (not reported), at the last October term of the circuit court in Maine."

In Potter v. Coggeshall (decided in 1870 by Judge Knowles, of the district court of Rhode Island) Fed. Cas. No. 11,322, it was held that, in cases unaffected by fraud, the assignee takes subject to all the equities binding upon the bankrupt. On petition for review in the circuit court, this last case was affirmed by Circuit Judge Shepley. Holmes, 75, Fed. Cas. No. 2,955.

In Donaldson v. Farwell, 93 U. S. 631, 23 L. Ed. 993, with reference to the rights obtained by the assignee in bankruptcy under the act of 1867, it is said:

"The assignment relates back to the commencement of the proceedings in bankruptcy, and vests, by operation of law, in the assignee the property of the bankrupt, with certain specified exceptions, although the same be then attached. It also dissolves any attachment made within four months next preceding the commencement of the proceeding. If there be no such liens, and the property has not been conveyed in fraud of creditors, he has no greater interest in or better title to it than the bankrupt."

In Casey v. La Société de Credit Mobilier, 2 Woods, 77, Fed. Cas. No. 2,496, it is said:

"An assignment in bankruptcy, like any other assignment, by operation of law, passes the rights of the bankrupt precisely in the same plight and condition as he possessed them, subject to all equities."

Citing Mitford v. Mitford, 9 Ves. 100; Gibson v. Warden, 14 Wall. 248, 20 L. Ed. 797; Campbell v. Slidell, 5 La. Ann. 274; Mitchell v. Winslow, Fed. Cas. No. 9,673; Ex parte Dalby, Fed. Cas. No. 3,540.

This case was subsequently before the supreme court, and that court, while holding (Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779) that an assignee in bankruptcy "may well oppose any privilege or preference which the law itself, unaided by a bona fide purchase or judgment, would regard as void against the general creditors in a direct contest between them and the parties claiming such privilege or preference, even though the debtor himself, on account of some personal disability arising from his own acts or engagements, could not resist the claim," further added, in the opinion by Justice Bradley:

"Where the legal or equitable property in a security passes, and there is no express law invalidating the transfer, the creditor will be entitled to hold it as well against the assignee or receiver as against the debtor, because the assignee only takes such title as the debtor has at the time of the assignment or insolvency."

But counsel for the trustee contends that the bankrupt act of 1898 is different in this respect from the act of 1867, and he relies upon section 70a, par. 5, to sustain this view. The language of the provision relied on is as follows:

"Sec. 70a. The trustee of the estate of a bankrupt, upon his appointment and qualification * * * shall be vested by operation of law with the title of the bankrupt * * * to all (5) property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him."

The provision of the bankrupt act of 1867 as to the title vesting in the assignee is as follows:

"All property conveyed by the bankrupt in fraud of his creditors; all rights in equity, choses in action, patent-rights, and copy-rights; all debts due him, or any person for his use, and all liens and securities therefor; and all his rights of action for property or estate, real or personal; and for any cause of action which he had against any person arising from contract or from the unlawful taking or detention, or injury to the property of the bankrupt; and all his rights of redeeming such property or estate; together with the like right, title, power and authority to sell, manage, dispose of, sue for, and recover or defend the same, as the bankrupt might have had if no assignment had been made, shall, in virtue of the adjudication of bankruptcy and the appointment of his assignee, but subject to the exceptions stated in the preceding section, be at once vested in such assignee." Rev. St. § 5046.

I am unable to see how any distinction can be drawn, favorable to the contention of counsel for the trustee, between the two acts. The purpose of both acts, although different language is used, seems to be to vest in the trustee the title to the entire estate of the bankrupt; and no distinction can be perceived which justifies the inference that under the last act the trustee takes the property of the bankrupt as an innocent purchaser, without notice, and that in the former he did not. The conclusion is that the demurrer to the bill, upon all the grounds taken therein, must be overruled.