In re McGEHEE.

(District Court, N. D. Georgia, N. W. D.   January 26, 1909.)

No. 378.

1. BANKRUPTCY (§ 140*)—PROPERTY HELD IN TRUST—RIGHTS OF CESTUI QUE TRUST.

A contract for the sale of fertilizers by the bankrupt provided that, until sold or paid for in cash by the customer, the fertilizers should remain the property of intervener, and, when sold, all the proceeds of the sale, including cash, notes, and open accounts, and the collections therefrom, should be kept separate and held by the bankrupt as a trust fund, and turned over to intervener as collateral security and pledged until the entire indebtedness of the customer, to wit, arising under the agreement, had been paid. *Held*, that intervener was entitled to all notes, accounts, and proceeds of sale in the hands of the bankrupt at the time of bankruptcy, except money which had been received for fertilizers and had gone into the bankrupt's general funds, subject only to such intervening liens or conveyances without notice as might have been obtained by third persons.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

2. BANKRUPTCY (§ 140*)—TITLE TO PROPERTY—RECEIPT.

Where intervener, under a contract for the sale of fertilizers by the bankrupt, was entitled to all uncollected notes received for fertilizers sold, intervener's right was not affected by a writing, given by the bankrupt within four months before bankruptcy, reciting that the bankrupt had received the notes listed therein for collection.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

In Bankruptcy.   On intervening petition of Troup Company.

Goetchius & Chappell, for trustee.
Henry Reeves and A. H. Thompson, for intervener.

NEWMAN, District Judge.   The questions for determination here arise upon a petition to review the decision of the referee on an intervening petition in the above-stated case by the Troup Company. On the 29th day of January, 1908, the Troup Company entered into a contract in writing with the bankrupt, E. H. McGehee, by which it agreed to furnish for sale by McGehee a certain specified amount of fertilizers, called "Blood and Bone." The contract, among other things, provided:

"That, until sold or paid for in cash by the customer, the fertilizers contracted for under this agreement shall remain the property of such company, and, when sold, all the proceeds of the sale of such fertilizers, including cash, notes, open accounts, and collections therefrom, shall be kept separate and be held by the customer as a trust fund and turned over to said company as collateral security and pledge until the entire indebtedness of the customer to it, arising under this agreement, has been paid."

The fertilizers were delivered, and a considerable quantity sold by McGehee. On the 17th day of October, 1908, McGehee sent the Troup Company a list of notes received by him for fertilizers sold, at the bottom of which list he stated:

"Received of the Troup Company the above-listed notes for collection."

Notes received for fertilizers sold, other than those set out in the receipt, are said to have been in the hands of E. H. McGehee, and also accounts for fertilizers sold were claimed to have been due. A demand in writing was made upon McGehee for all notes and accounts taken for fertilizers delivered to him, which demand was refused, and on the same day—the 18th day of November, 1908—a petition in bankruptcy was filed against McGehee, and a receiver was appointed. The receiver found the notes embraced in the list, and three other notes kept separate in an envelope, among McGehee's effects.

The prayer of the intervening petition of the Troup Company was that the receiver be directed to deliver to it all the notes set out in the receipt referred to, together with such an amount of money as may have been collected by McGehee on the notes; also all other notes and accounts which appear to have been the proceeds from the sale of the Troup Company's fertilizers. After a hearing the referee awarded to the Troup Company the notes set out in the list and found in the envelope, and also three other notes not listed. He disallowed the claim of the Troup Company to open accounts for fertilizers and any other fertilizer notes that might be hereafter found. The correctness of this decision is the matter for determination.

The Troup Company and McGehee had the right to make any contract as between themselves they saw proper, so far as the matters in controversy here are concerned. There is nothing illegal or wrong about the agreement between them, and as to them it would seem that the Troup Company had the right to claim all notes, accounts, and proceeds of sale of fertilizers in the hands of McGehee as its property until the notes due the company for fertilizers were paid. Treated either as a reservation of title or as an equitable lien arising from a written agreement between the parties, it is certainly valid as between them. Of course, this claim of the Troup Company would be subject to any intervening liens or conveyances without notice, inasmuch as the agreement was never recorded. It would also be subject to the rights of parties who gave credit to McGehee on the strength of his supposed ownership of this property without notice of any kind. Where money had been received from the fertilizers, and had gone into the general funds of McGehee, of course, there would be no rights on the part of the Troup Company. How far the creditors may have obtained rights to which the Troup Company's claims of priority should be subordinated is not shown by this record.

I think the referee found correctly, as far as he went; but I am of opinion that if there were accounts which were clearly for fertilizers sold, which could be separated and pointed out, and notes given for such fertilizers which could be clearly distinguished and pointed out, as between the Troup Company and McGehee, and also as between the Troup Company and the trustee in bankruptcy, the Troup Company would have the right to recover possession of such accounts and notes. Chattanooga National Bank v. Rome Iron Company (C. C.) 102 Fed. 755. The case will be sent back to the referee to make such modification of his ruling as may be consistent with what has just been stated.

166 F.—59

I do not think that the fact of McGehee's receipt for notes being given within four months before the filing of the petition in bankruptcy has any effect in this case. 'The rights of the Troup Company to the possession of these notes existed before the receipt was given, and the receipt added nothing to the rights which the Troup Company previously had under the terms of the contract. It seems probable that by this time the trustee will be able to point out more definitely to the referee exactly what notes and accounts there are in his possession, and whether they were given for the Troup Company's fertilizers, so that the referee may determine more satisfactorily to what notes and accounts the ruling made above should apply.

The case is referred back to the referee for any further action that may be necessary in accordance with the views hereinbefore expressed.