COMMISSIONER OF INTERNAL REVE-
NUE v. STEPHENS–ADAMSON MFG.
CO.

No. 4413.

Circuit Court of Appeals, Seventh Circuit.
July 27, 1931.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Dean P. Kimball, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

Lester B. Mann, of Chicago, Ill., and Lee I. Park and Charles D. Hamel, both of Washington, D. C., for respondent.

Before EVANS and SPARKS, Circuit Judges, and BARNES, District Judge.

EVANS, Circuit Judge (after stating the facts as above).

Petitioner argued that because the patent was not issued until 1918, the only basis for computing its depreciation was its cost, and, as its cost was nothing, the substantial allowances made by the Board of Tax Appeals for depreciation were unauthorized.

Article 167, Regulations 45 of the Treasury Department, reads as follows: "Art. 167. *Depreciation of patent or copyright.*— In computing a depreciation allowance in the case of a patent or copyright, the capital sum to be replaced is the cost (not already deducted as current expense) of the patent or copyright or its fair market value as of March 1, 1913, if acquired prior thereto. * * * "

Three questions are presented, which may be stated thus:

(1) Is an invention for which an application for a patent is pending March 1, 1913 "property," as that term is used in section 202(a), Revenue Acts of 1918 and 1921 (40 Stat. 1060; 42 Stat. 229) and section 204(a), Revenue Acts of 1924 and 1926 (26 USCA § 935 and note), so that its fair market value may be used as a basis of computing depreciation or exhaustion for each of the years in question?

(2) Does the fact that respondent paid nothing for the invention and the application for a patent, which were acquired prior to March 1, 1913, and which ripened into a patent grant subsequent to said date, prevent respondent from securing an allowance for the exhaustion of said patent?

(3) Assuming questions (1) and (2) are answered in favor of respondent, what was the fair market value of the invention and the application for a patent on March 1, 1913?

The first two questions will be considered together. The word "property," as used in the above referred to sections of the Revenue Acts, should not be given a narrow or technical meaning. In Lynch v. Alworth-Stephens Co., 267 U. S. 364, 369, 45 S. Ct. 274, 275, 69 L. Ed. 660, the court said: "The general provision * * * is that the deduction from gross income shall include a reasonable allowance for the 'exhaustion * * * of property.' *There is nothing to suggest that the word 'property' is used in any restricted sense.*"

[1-3] The ruling of the Treasury Department, article 167, Regulations 45, confirms our impression that the rights accruing to the inventor by reason of the issuance of a patent are within the meaning of the word "property," as that term is used in the statute. As we understand petitioner, he does not dispute the soundness of this conclusion. He makes an attempted distinction between the property of one who owns a patent and the rights of one who has merely a pending application for a patent. Such a distinction, it seems to us, goes to the value of the property right rather than to its existence. That one who has secured through assignment the application for a patent, or who has himself made a discovery of a patentable article, has a property right therein, is established by the fact that he may (35 USCA § 47) sell and assign his application for a patent. Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504; Cook v. Sterling Electric Co. (C. C.) 118 F. 45. We think it a fair definition to say that what may be sold and assigned is property. It has likewise been held that an application for a patent passed to the trustee in bankruptcy under section 70a of the Bankruptcy Act (11 USCA § 110(a). In re Myers-Wolf Manufacturing Co. (C. C. A.) 205 F. 289.

Petitioner relied largely upon Durham v. Seymour, 161 U. S. 235, 16 S. Ct. 452, 454, 40 L. Ed. 682. He points to the following language appearing in the opinion:

"Whether the alleged invention were patentable or not was the question, and that question had no relation to its value in money. If the invention were not patentable, Durham had suffered no loss; if the invention were patentable, it was not material whether it had or had not a money value. * * *

"The matter in dispute must have actual value, and that cannot be supplied by speculation on the possibility that, in a given case, an invention might be held patentable."

True, the court said, page 238 of 161 U. S., 16 S. Ct. 452, 454: " * * * But 'until the patent is issued there is no property

right in it; that is, no such right as the inventor can enforce. At all events, there is no power over its use, which is one of the elements of the right of property in anything capable of ownership.' Marsh v. Nichols, 128 U. S. 605, 612, 9 S. Ct. 168 [32 L. Ed. 538]; Brown v. Duchesne, 19 How. 193 [15 L. Ed. 595].''

But the real question in controversy in the Durham Case was over the jurisdictional amount in dispute. Without a showing "that the matter in dispute in the courts below was money to an amount exceeding $5,-000, exclusive of costs; or some right, the value of which could be ascertained in money and exceeded that sum," the court was without jurisdiction of the appeal. We think there is a justifiable distinction between "property" as used in the Revenue Act and a matter in controversy having a value in excess of $5,000 as used in the other act.

Likewise, the Durham Case can be distinguished upon another ground. In that case, the litigation was between the applicant for a patent and the Commissioner of Patents. There was no controversy between these parties over any sum of money. The subject of the litigation was the applicant's right to a patent. The value of such patent, as between the Commissioner and the applicant, was not in dispute. No ·judgment or decree for any sum of money could have been entered in plaintiff's favor had he prevailed. The effect of the holding, therefore, is that the naked right to a patent did not involve a sum of money exceeding five thousand dollars.

Congress, in enacting this legislation, was dealing with a most practical problem—the problem of taxation. Tyler v. U. S., 281 U. S. 497, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758. In construing any Revenue Act, we, therefore, should not ignore the ordinary everyday commercial experiences which constitute its background.

It is, we think, common knowledge that an individual may have property (unpatented discoveries) which, in the ordinary channels of commerce, would be readily recognized as of substantial value, even though the inventor has gone no further than to file an application for a patent to cover the invention.

We conclude that respondent's invention and its application for a patent were "property" as that term is used in the statute.

It follows, too, that if one may have a property right, within the meaning of the Revenue Act, in and to a pending application for a patent, the basis (cost or fair market value as of March 1, 1913) for determining exhaustion must be fixed as of the day he acquired such right. Section 204 (a), (b), Revenue Act 1926, 26 USCA § 935. Here, the right was acquired in 1911, and, therefore, the fair market value as of March 1, 1913, rather than its cost price, must be used as the basis for determining depreciation or exhaustion.

We conclude that the Board of Tax Appeals properly held that it was required to determine the fair market value of the invention and the pending application for a patent as of March 1, 1913, and to use such valuation as the basis for determining the respondent's deduction for exhaustion of such property for the years in question.

(3) The Board fixed the fair market value of the invention and application for a patent on March 1, 1913, at $500,000. There is some evidence to support this finding, and we, therefore, are not at liberty to disturb it. Doubtless, there is considerable danger of a fact-finding body being unduly influenced by the subsequent grant of the patent in determining the value of an invention, to cover which an application for a patent is pending in the Patent Office. We are not prepared, however, even were we permitted so to do, to say from all of the evidence, which covered a wide range of valuation, that the finding fails to correctly appraise the worth of this highly valuable property. The weakness of respondent's testimony is apparent. However, the Board of Tax Appeals discounted this testimony liberally.

The order is affirmed.