## EXCHANGE NAT. BANK OF TULSA v. DAVY et al.

### No. 1050.

District Court, N. D. Oklahoma.

Jan. 7, 1936.

Joseph L. Hull, Charles E. Bush, and James E. Bush, all of Tulsa, Okl., for plaintiff.

C. E. Bailey, U. S. Atty., and Chester A. Brewer, Asst. U. S. Atty., both of Tulsa, Okl., for the United States.

KENNAMER, District Judge.

This is an action for the foreclosure of a real estate mortgage against Claude W. Davy, and Leona Davy, his wife, in which the United States of America was joined

as a defendant, because of the filing of a notice of income tax lien for income tax levied and assessed against Davy for the taxable year 1930. The evidence established the following facts: On May 7, 1930, a trust agreement was entered into between Davy and the Exchange Trust Company, and Davy deposited $20,000 in the trust estate. On November 13, 1930, the Exchange Trust Company, trustee for Davy, invested $7,000 in notes executed by one Mason, the same being a part of a loan of $8,000 made by the Exchange National Company to Mason, which was secured by a mortgage on real estate in the city of Tulsa. The trustee received a participation of $7,000 in the $8,000 mortgage from the Exchange National Company. On January 22, 1932, Davy borrowed $7,000 from the Exchange National Bank, plaintiff herein, and executed his note in that amount as evidence of the indebtedness. On the same date he executed an assignment to plaintiff, assigning all the assets in his trust estate, and notice of the assignment was served on the Exchange Trust Company by the bank. The assignment was not placed of record. On June 8, 1932, the trustee instituted suit for the foreclosure of the mortgage, which resulted in judgment, and sale of the property. The trustee was the purchaser at the sale, and on November 10, 1932, a sheriff's deed was executed to the Exchange Trust Company, trustee for Davy, conveying the property foreclosed. On June 29, 1933, the Exchange Trust Company became insolvent, and its assets were turned over to the state bank commissioner. On November 11, 1933, Davy revoked his trust agreement with the Exchange Trust Company. On February 10, 1934, the state bank commissioner executed a special warranty deed, conveying the real estate to Davy, and delivered the deed to an agent of the Exchange National Bank. On February 23, 1934, the plaintiff delivered the deed to Davy and took from him a real estate mortgage, covering the property described in the deed, to secure the payment of the $7,000 indebtedness. The mortgage was placed of record March 2, 1934. The notice of income tax lien was filed in the office of the county clerk of Tulsa county, Okl., and in the office of the clerk of the United States District Court for the Northern District of Oklahoma, on December 22, 1932. The question presented is one of priority. The bank was the holder of the assignment of the beneficial interest in the trust property prior to the filing of the notice of income tax lien, which property consisted of a participation in a chose in action, a note secured by real estate mortgage. The trust property had been converted into real estate, by foreclosure of the mortgage, before the notice of income tax lien was filed, but the notice was filed for record prior to the delivery of deed to the property to Davy and the execution and delivery of the real estate mortgage by Davy to the bank. Plaintiff had an assignment of the trust, which was a lien upon an equitable estate. Davy, as beneficiary, had equitable title to the trust property; the Exchange Trust Company had bare legal title to the property, as trustee. The assignment of the trust estate was given to secure the payment of the indebtedness. It was an equitable lien. Davy continued as owner of the equitable estate in the trust, subject to the lien of plaintiff, until he revoked the trust agreement, resulting in the transfer of legal title to the property by the state bank commissioner, to the beneficial owner, but subject to the equitable lien of plaintiff. Because of the assignment of the trust to the bank, and notice thereof to the trustee, the deed was not delivered to Davy, but was given to the plaintiff, who in turn delivered it to Davy when given a mortgage upon the property. As soon as Davy's title was changed from equitable to legal, the bank obtained a legal lien in substitution of its equitable lien. The evidence establishes that the bank did nothing to waive its lien, but, on the contrary, was diligent in preserving its security, and obtained a real estate mortgage in place of its equitable lien, as soon as the debtor was in a position to execute such a mortgage.

The question for determination is whether the filing of notice of income tax lien subsequent to the assignment of the trust estate, which was not recorded, but prior to the recording of the real estate mortgage, creates a prior right in the United States to payment out of the property over the lienholder.

The income tax lien, sought to be foreclosed in this action, was created by Act of May 29, 1928, § 613 (a) (45 Stat. 875, 26 U.S.C.A. § 115 [see 26 U.S.C.A. § 1560]), which provides a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to the person liable for

the payment of taxes. The effective time of the lien is also fixed in the act. Subsection (b) of section 115, 26 U.S.C.A. (see 26 U.S.C.A. § 1562) provides that the lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice has been filed. Provision is made for filing notice in accordance with the laws of the state, or in the office of the clerk of the United States District Court in the district in which the property subject to the lien is situated. In the instant case notice was properly filed in accordance with the statute.

It is noteworthy that the act provides that the lien shall not be valid as against any mortgagee until notice has been filed. It does not provide in its terms that the mortgagee shall be one who has recorded his mortgage; it does not expressly state that after notice is filed the lien in favor of the government shall be subject to all existing mortgages, or that the lien of the government shall be superior to them. It has been judicially determined, and properly so, that the lien of the United States in such cases is subject to prior recorded mortgages. See Sherwood v. United States (D.C.) 5 F.(2d) 991; Ormsbee v. United States (D.C.) 23 F.(2d) 926. No case has been submitted which extends the ruling to unrecorded mortgages, and in my opinion, to so extend it, would open a way for fraud and wrongdoing, to the great prejudice of the government. The act should not be construed to declare the tax liens invalid as against a mortgagee who has not recorded his mortgage, because of the provisions relating to the filing of notice. This clearly is intended to place the government in the same position as any other lienholder who is diligent in filing or recording liens, and it is to be accorded the same rights and benefits of the recording statutes which are given individuals. The filing of notice is necessary if the government is to have such a lien, and thus, individuals are afforded notice before dealing with property subject to such tax liens.

█ The lien of the United States created by act of Congress is a broad one. It is more extensive than mortgages and other liens in that the property to which it attaches does not have to be specified. It is general, and attaches to all property and rights to property, whether real or personal. But, the act must be construed reasonably, and with respect to property

rights of individuals. The recording statutes apply to real estate transfers and transactions; they are not applicable to personalty. The tax lien attaches to personal property, as well as rights to property, in addition to real property. The tax lien provided by the congressional act attaches to personal property or choses in action, subject to the existing rights of third persons. To illustrate, stocks or bonds hypothecated prior to the filing of notice of tax lien should create a lien upon such stocks or bonds subject to the lien of the pledgee, as no recording is necessary for such a pledge. The same should follow with respect to other personal property, as chattels. It should likewise be true as to equitable liens, because such a lien generally grows out of a contract or assignment, differing widely from a mortgage or deed, and if offered for recording, could not be recorded as a mortgage or deed, and if received for recording, would have to be recorded in the miscellaneous records of the county clerk.

█ In the instant case, the equitable lien arose by the assignment of the trust, and the trust property consisted of a chose in action, not real property, when given. No recording was required of such an assignment. The assignment became effective upon the trustee when notice of it was given; the beneficiary could not have effectively assigned the trust property to another after the first assignment, because the trustee, the legal title holder of the trust property, would have been bound to respect the first assignment. When the government filed notice of the tax lien, such lien attached to the trust property, subject to the rights of the assignee, the plaintiff herein. If the mortgage securing the note participated in by the trust had not been foreclosed, the tax lien would have attached to the note participation certificate subject to the assignment, or lien, of the bank. Does the fact that the mortgage was foreclosed and the security, the land, substituted for the chose in action, as the trust property, lessen the rights of the bank and increase the rights of the government? There is nothing in reason or equity to justify such a result. Advancing a step forward, should the fact that the trust agreement was terminated and the trust property conveyed to the beneficiary lessen the rights of the bank and enlarge the rights of the United States? There may be instances when

such a result should follow, but in this case the plaintiff was diligent in protecting its security. As soon as the debtor changed his ownership from an equitable (cestui que trust) to a legal one, the bank converted its equitable lien (its assignment of the trust benefit) to a legal one, a real estate mortgage. Where there is no express waiver, an equitable lien, which has once arisen, is not waived by the subsequent taking of a legal and perfected lien to the same extent and upon the same property. See 37 Corpus Juris, 336. A contract creating an equitable lien, when not a legal mortgage, cannot be affected by failure to record as a mortgage, as required by the laws of a state to render it enforceable against creditors or purchasers without notice. Chattanooga Nat. Bank v. Rome Iron Co. (C.C.) 102 F. 755. The tax lien provided by the act is a general lien, and it is not necessarily to be preferred over any other lien. City of Winston-Salem v. Powell Paving Co. (D.C.) 7 F. Supp. 424, at page 428.

It is unnecessary to determine whether the tax lien involved herein has the effect of a judgment lien or a mortgage lien. If it is to be considered as a judgment lien, plaintiff is entitled to prevail. See Guaranty State Bank v. Pratt, 72 Okl. 244, 180 P. 376; Oklahoma State Bank v. Burnett, 65 Okl. 74, 162 P. 1124, 4 A.L.R. 430; Cassidy v. Bonner (C.C.A.) 54 F.(2d) 234. If the tax lien has the effect of a mortgage lien, then the United States must be subsequent to the rights of plaintiff. The fact that an earlier lien is released and a new mortgage is taken, while a lien junior to the first lien is in effect, does not deprive the holder of the first lien of priority, unless there is evidence of waiver of the prior lien. See Pearson v. Harris (C.C.A.) 200 F. 10; In re F. MacKinnon Mfg. Co. (C.C.A.) 24 F.(2d) 156; Swift & Co. v. Kortrecht (C.C.A.) 112 F. 709.

The tax lien attached to the trust property subject to the rights of plaintiff. Plaintiff preserved its lien upon the property, while it was in the trust, and as soon as it was removed from the trust, by changing its lien from equitable to a legal mortgage. The change in the form of the security held by the bank in equity should not deprive it of its security. The tax lien continued as a lien, but subject to the lien, both under the assignment and the mortgage, of the bank. Plaintiff is entitled to priority in payment from the proceeds of

*Decree affirmed — F.(2d) —.

sale of the property being foreclosed, over the United States. A decree may be entered ordering the real property sold free from the tax lien, as well as the mortgage, and that from the proceeds of the sale, the costs of the action and of the sale shall first be paid; then the mortgage debt of plaintiff shall be payable, and the residue, if any, shall be paid into the registry of the court, to be paid to the government, upon proper application therefor, in satisfaction of the tax lien. If any funds remain after such payments, they shall be subject to further distribution in accordance with the rights of the defendants Davy.