**EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. MOORE et al.**

**DRAKE et al. v. DALLMAN, Collector of Internal Revenue, et al.**

**ILLINOIS JOINT STOCK LAND BANK OF MONTICELLO v. MOORE et al.**

**Equity No. 640–D; Civil Nos. 25–D, 46–D.**

District Court, E. D. Illinois.

Oct. 2, 1939.

No. 640–D:

Green & Palmer, of Urbana, Ill., for plaintiff.

LeForgee, Samuels & Miller, of Decatur, Ill., and Allen, Dalbey & Foreman and Arthur Roe, U. S. Atty., all of Danville, Ill., for defendants.

No. 25–D:

Thompson, White & Ingram, of Sullivan, Ill., and C. E. Corbett, of Monticello, Ill., for plaintiffs.

Arthur Roe, U. S. Atty., of Danville, Ill., for defendants.

No. 46–D:

Robt. P. Shonkwiler, of Monticello, Ill., for plaintiff.

Thomas J. Kastel, of Springfield, Ill., for receiver of Moore State Bank.

Thompson, White & Ingram, of Sullivan, Ill., for Trenchard & Drake.

Arthur Roe, U. S. Atty., of Danville, Ill., for the United States.

LINDLEY, District Judge.

In view of the common questions involved, I shall dispose of all three causes in one memorandum.

In each, the United States seeks to establish against all other parties in interest priority of its asserted lien for income taxes assessed against Allen F. Moore for the year 1926. In the first, Equitable Life Assurance Society v. Moore, et al., Equity No. 640–D, foreclosure of a mortgage in this court resulted in a decree in favor of the mortgagee, March 8, 1935, wherein the court found and decreed that the taxpayer owed the United States $5,723.52 with interest, for which it had a lien upon the mortgaged premises and the rents and profits thereof, subordinate, however, to the lien of the mortgagee. The Continental Illinois National Bank & Trust Company was a party defendant in the cause and the decree found and decreed that its interest, if any it had, was subsequent and subject

to the lien of the mortgagee. However, the decree made no disposition of the question of priority between the Government and the Continental Illinois National Bank & Trust Company. A receiver was appointed and in due course filed his final report, from which it appears that, after satisfying the mortgage and accounting for the rents and profits, there remains in his hands a substantial surplus, which should be delivered to such of the parties as the court shall direct. The proper distribution of that surplus is one of the questions now confronting us. The United States claims a lien thereon prior to the rights of the Continental Bank and prior to the claim of Drake, originally as receiver and now as shareholders' agent of the First National Bank of Monticello, Illinois. Drake, in the capacity mentioned, has filed a claim of lien upon the surplus based upon a judgment obtained in the Circuit Court of Piatt County March 30, 1935, against Moore in the sum of $6,492.41. A part of the judgment has been satisfied by sale of certain property described in cause 25–D. This lien, Drake asserts, is superior both to the claim of the Government and the claim of the Continental Bank. The latter's claim of title is based upon a deed and an assignment dated December 4, 1936, whereby Moore assigned to the bank all of his interest in all funds that might come into the hands of the receiver.

In cause 25–D, Drake, in the capacity aforementioned, seeks to enjoin the Collector of Internal Revenue from enforcing the alleged tax lien against property which it has previously sold under execution upon its judgment for $6,492.41. The evidence shows that the judgment was recovered by Drake on March 30, 1935; that execution immediately issued thereon and that sale was had of the premises described; that on March 8, 1933, the Collector filed his notice of tax lien in the Recorder's Office of Piatt County, Illinois; that subsequent to the sale under execution followed by deed from the sheriff, on or about December 22, 1938, the Collector posted notice of sale of the same premises for distraint for the payment of the assessment above mentioned. Drake claims that no lien exists because the period allowed for making assessment had expired. He seeks a decree clearing and quieting his title of the asserted claim of the United States.

In Illinois Joint Stock Land Bank v. Moore, Civil 46–D, plaintiff bank filed a bill of interpleader against Moore, Drake, Collector of Internal Revenue, United States of America, Trenchard and Albers, Receiver of the Moore State Bank of Monticello, Illinois, in which it averred that Moore was the owner July 9, 1927, of 250 shares of the stock of plaintiff corporation; 50 of the shares being represented by certificate No. 87, 70 by certificate No. 131, and 130 by certificate 155; that plaintiff is in process of liquidation; that three dividends to shareholders of record of 20 per cent each, aggregating 60 per cent, have been paid to all stockholders except to Moore.

Plaintiff has $15,000 on hand rightfully applicable to dividends upon the 250 shares. It avers that the part of this fund applicable to 180 shares is claimed by Albers as receiver of the Moore State Bank; that Trenchard claims the dividends upon 70 shares held by him as collateral for a loan; that the Government asserts a lien upon the fund to the extent of its alleged tax lien as aforesaid; that Drake as receiver claims a lien upon the dividends to the extent of its unpaid balance due on its judgment lien and that plaintiff holds the money merely as a stake-holder. It has brought the fund into court and seeks a decree adjudging the respective rights and priorities of the parties therein and thereto.

Thus, in each of the three causes, the United States is relying upon a claim of priority to the full extent of its unpaid tax demand and the question arises first in 640–D as to whether the United States, the Continental Bank or Drake, as shareholders' agent of a national bank, shall prevail. In 46–D, the question is whether the United States shall prevail in its claim of prior lien upon the dividends payable upon the stock held by the Moore State Bank or whether the claims of Trenchard, Albers as receiver and Drake as shareholders' agent are superior thereto. Closely interwoven with these is the prayer in 25–D that the Collector of Internal Revenue's claim shall be decreed void as a lien upon the title of Drake by virtue of sheriff's deed received upon execution sale.

Most of the facts are beyond dispute. The Commissioner of Internal Revenue issued a certificate of assessment of additional income taxes against Moore for the year 1926 on February 14, 1931, and caused it to be filed of record in the office of the Recorder of Deeds in Piatt County, Illinois, on March 8, 1933, and in the office of

the Clerk of the United States District Court for the Eastern District of Illinois, on March 9, 1933. Moore executed a waiver of limitation of time within which the assessment might be collected, on December 2, 1936, which extended the period of collection to December 31, 1938. At various times in the years of 1936, 1937 and 1938, he made offers in compromise, each providing that the time within which the assessment might be collected should be extended until a year following the rejection of the offers. As a consequence the Government claims that the period within which the assessment might be collected has been extended to September 30, 1939. Upon these facts the Government asserts that it has a lien upon the funds in the hands of the receiver in the foreclosure case, upon the real estate previously sold and bid in by Drake and upon the dividends payable upon the stock in the Illinois Joint Stock Land Bank owned originally by Moore and assigned by him to Trenchard and the Moore State Bank.

Trenchard loaned $7,000 to Moore on March 4, 1937, and as security for payment of the same, Moore assigned and delivered to him, certificate for 70 shares of stock of the Joint Stock Land Bank. Trenchard gave no notice of the assignment to the Joint Stock Land Bank prior to October, 1937, but he insists that title to the stock passed to him by the assignment of Moore, superior to the claims of all others.

Albers' claim is founded upon a note for $25,000 executed by Moore and delivered to the Moore State Bank on May 14, 1928. At that time Moore delivered to the bank as collateral certificates for 180 shares of said stock assigned in blank. The bank gave the Joint Stock Land Bank no notice of its assignment of the stock prior to November, 1937, but its receiver insists that by the assignment, it received complete title to the stock as against the Government and all other persons.

The Continental Illinois National Bank & Trust Company claims, as against Drake and the Government, that it is entitled to receive the funds held by the receiver in the foreclosure case because it has received from Moore a deed and an assignment of all his right, title and interest in the funds in the hands of said receiver. This assignment, the Continental Bank says, is superior to the claims of the Government and of Drake.

I shall first dispose of the defense of the statute of limitations, which each of the claimants other than the United States sets up against the asserted lien of the latter.

Section 1560, Title 26 U.S.C., 26 U.S.C.A. § 1560, provides that the Government shall have a lien for unpaid income taxes upon all the property real and personal of the taxpayer; Section 1561 that the lien shall arise at the time the assessment list is received by the collector and continue until discharged or unenforceable because of lapse of time; Section 1562 that it shall not be valid as against any purchaser or lien creditor until notice has been filed by the collector, in accord with the law of the state in which the property is situated; Section 276 that, where the assessment has been properly made, the tax may be collected only if begun (1) within six years after the assessment, or (2) prior to the expiration of any extension of the statutory period, agreed upon in writing by the commissioner and the taxpayer. Such agreed period may be extended by subsequent agreements.

Here, the lien, as against Moore, arose on February 19, 1931, when the assessment list was received by the Collector of Internal Revenue for this District. This lien became valid, as against Moore's mortgagees, purchasers and judgment creditors on March 8, 1933, when notice of the tax lien was filed in the office of the Recorder of Deeds of Piatt County, Illinois, where Moore lived and where his property was located. Thus, the tax might have been collected, in the absence of any extension, under the statute, at any time before February 19, 1937, but by specific waiver agreement between the taxpayer and the United States, this time was extended to December 31, 1938, and thereafter until September 30, 1939. These extensions, however, were recorded nowhere. The claimants other than the United States contend that, in the absence of recording, they were of no effect as against Moore's lien creditors, and that, therefore, such parties, from and after February 19, 1937, were prior in right to the claim of the United States because of the expiration of the lien. Consequently the ultimate question of outlawry centers around the simple question of whether the extensions of time were effective to continue the lien, without being recorded.

In Loewer Realty Co. v. Anderson, 2 Cir., 31 F.2d 268, the court discussed a similar question, saying that statutes of limitations should receive strict construction in favor of the Government; that limitations will not be presumed in the absence of clear Congressional action and that the purpose of the statute was to give the commissioner additional time to assess taxes, if he obtained the consent of the taxpayer. The court held that it was intended to include specific years within which it was permissible to make the assessment where no extension had been agreed to, and in case a waiver had been signed, the same period plus the extended period. The statute provides for preservation of the lien within each. To the same effect are American Natural Gas Company v. United States, Ct.Cl., 13 F.Supp. 69, and Atlas Securities Company v. Commissioner of Internal Revenue, 8 Cir., 58 F.2d 214. The court concluded as did the court in Loewer Realty Co. v. Anderson, supra, that the statute bars collection within the definite period only in case no waiver has been given and that the bar of the statute does not exist until the termination of the period covered by the waiver.

■ It is asserted by claimants that the Government's lien is like unto a judgment on which no execution can be issued after a certain number of years. After that period the lien of the judgment expires and ceases to have legal existence until and unless renewed by scire facias or other proper proceeding. But I am not satisfied that such reasoning is applicable to the present statute. The parties dealing with the property of the taxpayer against whom a tax lien has been filed are charged with notice of the recorded lien and with notice of the provisions of the statute continuing and extending the same under certain conditions. They are bound to know that if the lien has been discharged in whole or in part, a release must be filed by the collector (Title 26, Section 1563 United States Code, 26 U.S.C.A. § 1563), and that the time within which collection may be made may be extended by written agreement. Any inquiry directed to the commissioner or the collector will produce advice of the status of the lien. It was the intent of Congress to give notice to third parties by the filing of the lien and to continue that lien in existence until satisfied or until six years and such additional period as might be agreed upon by the taxpayer and the

commissioner had expired. Parties dealing with the property must take notice of the existence of such lien and of the possibility of extension beyond the six year period. I conclude that the statute did not bar the enforcement of the lien until the expiration of the last extension, September 30, 1939.

■ Albers as receiver of the Moore State Bank of Monticello attempts to enforce in favor of his trust estate a pledge of certificates of stock for 180 shares of Illinois Joint Stock Land Bank by Moore to the bank made on May 14, 1928. On that date Moore borrowed $25,000 from the bank and assigned the shares as collateral security for the payment of his loan. The bank was closed on February 18, 1933, and thereupon the receiver was appointed and qualified. The $25,000 note has been kept alive by renewals, and there is now due to the receiver of the bank upon the obligation $35,841.37. It is urged by the Government that this assignment of stock was invalid as against the lien of the United States for the reason that it was not recorded on the books of the company issuing the stock; that under the Federal Statute the Illinois Joint Stock Land Bank had a right to provide by its by-laws how stock could be transferred. The evidence is that in the by-laws, it was provided that transfers of the stock should be valid only if recorded on the books of the company. Therefore, says the Government, the assignment to the bank, not being so recorded and being secret, is void as against the lien of the United States. The reply of Albers is that an assignment of a chose in action, made in good faith prior to the attachment of the lien of the United States, is valid in Illinois. There is no question that this is the rule. But the Government's position is that the federal statute works a different result and that the Illinois law is not controlling.

A similar question arose in Exchange National Bank v. Davy, D.C., 13 F.Supp. 226, 228. There an equitable lien arose by assignment of a trust estate prior to the attachment of the lien. It was not recorded. The Government insisted that its lien, therefore, took precedence, but the court overruled the contention, saying: "In the instant case, the equitable lien arose by the assignment of the trust, and the trust property consisted of a chose in action, not real property, when given. No recording was required of such an assignment.

The assignment became effective upon the trustee when notice of it was given; the beneficiary could not have effectively assigned the trust property to another after the first assignment, because the trustee, the legal title holder of the trust property, would have been bound to respect the first assignment. When the government filed notice of the tax lien, such lien attached to the trust property, subject to the rights of the assignee, the plaintiff herein. * * * A contract creating an equitable lien, when not a legal mortgage, cannot be affected by failure to record as a mortgage, as required by the laws of a state to render it enforceable against creditors or purchasers without notice. Chattanooga Nat. Bank v. Rome Iron Co., C.C., 102 F. 755."

 Similar in its reasoning is United States v. Beaver Run Coal Co., 3 Cir., 99 F.2d 610, though it must be observed that there the mortgage had been recorded prior to the attachment of the lien of the Government. The weight of authority is stated, in 9 Corpus Juris Secundum, Banks and Banking, p. 1102, § 581, as follows:

"The negotiability or transferable quality of the stock of a national bank depends on the laws of the United States and cannot be controlled by state statutes and decisions, although the legal capacity or power of a particular person to make a disposition or transfer of such stock may be governed by state law.

"At the present time, the controlling federal law on the subject of transfers is U.S.Revised Statutes § 5139, 12 U.S.C.A. § 52, which provides that the stock of a national bank shall be deemed personal property, and transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association; and that every person becoming a shareholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of the prior holder of such shares. Under this provision national bank stock is, as a general rule, salable and transferable at the will of the owner the same as any other personal property; and the directors or stockholders cannot control the right of a stockholder to make an absolute sale of his stock to any person capable of purchasing and holding it and of assuming the liability of the transferor with respect thereto, regardless of the fact that the transferor is indebted to the bank. While the manner of transfer can be prescribed by the by-laws or articles of association, such authority can be exercised only to prescribe conditions which are essential to the protection of the association against transfers which are fraudulent or which may be designed to evade the just responsibility of the stockholder. Moreover, regulations or conditions so prescribed are operative only for the benefit of the corporation, its stockholders, and its creditors, and as to all other parties a transfer of such stock which is good at common law is good under the statute. As between the parties the title to stock is transferred by the seller's delivery of his certificate thereof to the purchaser, indorsed or assigned in the usual manner, without more; and either party may then compel the registration and transfer of the stock on the books of the bank. Also a pledge of national bank stock as collateral security may be effected by a delivery or assignment of the certificate without a compliance with recording or other requirements."

In Continental National Bank v. Eliot National Bank, C.C., 7 F. 369, 371, the court had to do with the validity of an unrecorded transfer of national bank stock as against a subsequent attachment in behalf of a creditor without notice. The statute regarding the right of the bank, by its by-laws to provide how transfer of the stock can be made, is substantially the same as that covering Joint Stock Land Banks, and in the case cited the by-laws of the national bank provided that stock should be assignable only on the books of the bank. But the court held the assignment valid against later attachment. The court said: "It is a general rule that creditors, whether they proceed by an attachment on mesne process, seizure on execution, creditor's bill, or through an assignee in bankruptcy, must take their debtor's property subject to all equitable as well as legal charges, liens, or opposing titles. * * * The incorporeal property of the shareholder in a company of this sort is represented by his certificates; and, if these are conveyed, the failure to record the conveyance is not evidence of such a constructive fraud as sometimes arises from the possession of chattels after the property has been parted with. On the contrary, it was proved in early cases to be the usage, and is now adopted by the courts as law based on such usage, that the possession of the certificates, with a power to transfer them, is prima facie evidence of title; and if, in fact, the possessor has given value, his

title cannot be impeached even by subsequent purchasers who did not receive the certificates, much less by creditors of the transferrer. In late cases these certificates are likened to bills of lading and other quasi negotiable securities." Similar in their reasoning and conclusions are Dickinson v. Central National Bank, 129 Mass. 279, 37 Am.Rep. 351; Scott v. Pequonnock Nat. Bank, C.C., 15 F. 494 at page 500; Hazard v. Nat. Exchange Bank, C.C., 26 F. 94; Masury v. Arkansas Nat. Bank, 8 Cir., 93 F. 603. A full annotation of pertinent decisions appears in 67 L.R.A. 664.

I conclude that Congress, inasmuch as it has clearly attempted to protect pledgees, mortgagees and purchasers, as to an assignee of stock, transferable only on the books of the company, did not intend that such a restriction should nullify the pledge as against a subsequent lien.

I am aware that there has been authority to the contrary. Thus in United States v. Rosenfield, D.C., 26 F.Supp. 433, the court held that a bona fide purchaser for value of shares of stock from a seller against whom a notice of lien had been duly filed prior to the sale took subject to the lien. Congress took cognizance of this disposition and in debate commented that when a broker purchases securities on the exchange, it is obviously impossible to check all the offices in which a notice of the tax lien may be duly filed. Accordingly it amended the act by section 3672, Title 26 of the U.S.C., 26 U.S.C.A. § 3672. In the amendment it provided that even though notice of a lien has been filed in the manner prescribed in the statute, it shall not be valid as against any mortgagee, pledgee or purchaser, if at the time of such mortgage, pledge or purchase, the latter is without notice of the existence of such lien. However, this statute does not control the rights of Albers and the United States here. The congressional comment is referred to merely for the purpose of showing the intent of Congress and its conviction as to the proper protection of purchasers and lien creditors.

■ It follows from what has been said that the bank for which Albers is receiver, in 1928 acquired title to Moore's stock in the Illinois Joint Stock Land Bank as collateral security for its loan and that the lien of the United States, which came into effect thereafter, is subject thereto.

Drake as receiver of the First National Bank of Monticello obtained a judgment against Moore in the Circuit Court of Piatt County March 30, 1935. Thereafter he levied upon and sold on July 2, 1937, certain ·property of the taxpayer and in due time received a sheriff's deed for the same. This title Drake asserts against the United States, claiming that it is prior to the latter's lien.

■ However, we have seen that the lien of the United States attached as against judgment creditors on March 8, 1933, and that it continued in full force and effect after that date until the present time. Inasmuch as the statute of limitations has not barred the lien and inasmuch as it was of record at the time Drake procured his judgment and execution, it follows that Drake's action was subordinate to and subject to the rights of the United States of which notice had been given by the filing of the lien. Furthermore Drake knew in 1935 of the Government's lien. Consequently Drake and his co-plaintiff, who stands in a similar situation, cannot succeed in their complaint. Their liens are subject and inferior to those of the United States and the latter has a right to proceed with its distraint for collection from and out of the real estate sold to Drake. The bill in this cause, therefore, must be dismissed for want of equity. As was said in Loewer Realty Co. v. Anderson, supra, plaintiff acquired the property subject to a tax lien.

In cause 640–D, we have seen that the receiver has on hand $6,517.29 which, in the absence of other prevailing circumstances, would be payable to Moore, the taxpayer. As we have observed, the decree of foreclosure found that the Government had a second lien upon the premises and the rents and profits thereof to secure its tax claim. Drake, because of his position above defined, claims a lien upon the fund, and the Continental Illinois National Bank & Trust Company likewise claims the funds as against both Drake and the Government because of a deed by Moore and his wife dated October 27, 1931, and an assignment· from Moore dated December 14, 1936, whereby the latter assigned to the bank all of his right, title and interest in and to the funds then and thereafter to be in possession of as receiver. What we have said disposes of the claim of priority of Drake. As pointed out, the lien of the United States attached to all property real and personal of Moore in 1933. Drake's judgment lien did not come into effect

until 1935. Consequently the Government's lien is superior.

■ The same answer would have to be given as to the claim of the Continental Illinois National Bank & Trust Company if it were grounded solely upon its assignment. So far as the evidence discloses, the bank took a valid assignment of Moore's interest in the fund in court in 1936, but the Government's lien had attached prior thereto in 1933, and had been found valid in a decree, to which the bank was a party, in March 1935. Under my conclusions as expressed herein, the lien of the Government, remaining in full force and effect, would take precedence over the title of the Continental Bank, who, by decree, had notice of the lien at the time it took its assignment. But there is an additional fact in evidence which radically changes the situation. Moore and his wife executed a quit claim deed of the premises, out of which the fund now in court grew, to the nominee of the bank, in October, 1931, recorded February 21, 1933. The lien of the Government did not attach until March 9, 1933. Thus it appears that at the time the Government's lien was perfected already existing in the Continental Bank, through its nominee, was good title by way of a valid conveyance of all interest in the premises or the proceeds therefrom. Because of what has been said, it is apparent that the rights of the bank, therefore, under this deed are superior to those of the Government. See Exchange National Bank v. Davy, supra.

■ As against Drake, likewise the lien of the Continental Illinois National Bank & Trust Company must prevail because of the deed executed in 1931 and the assignment executed December 4, 1936. Drake's asserted lien against the funds arise out of a garnishment in 1937, but the deed and assignment of the funds to the Continental Bank having been perfected prior thereto, the bank must prevail against Drake also.

■ There remains to be disposed of the controversy between Trenchard and the Government in the interpleader suit. Trenchard claims the dividends upon 70 shares of stock held by Moore in the Illinois Joint Stock Land Bank by virtue of an assignment of the shares as a pledge on March 7, 1937, as security for a loan of $7,000. The assignment was of the same character as that to the Moore State Bank. There was no record on the books of the company issuing the stock and no notice to the Government. However, at that time the lien of the Government had attached and had remained in full force and effect. The pledge of the stock to Trenchard was subject to the lien of the Government, unless Trenchard is entitled to subrogate himself to the rights of a prior holder of the stock. It is suggested in Trenchard's brief that such subrogation exists, but the evidence is not sufficient to sustain the contention. Trenchard himself apparently did not know where the stock was when he made the loan. He took it, not by assignment from the prior holder, but directly from Moore. The money he loaned was delivered not to the prior assignee but to Moore himself. Thus, it appears from the evidence that the transaction was one entirely between Trenchard and Moore. The former's rights must be determined as of the date upon which he took the assignment, which is subsequent to the attachment of the Government lien. Nor is Trenchard in any better position because of the recent amendment, for the evidence is such that he must have known, and did in fact know, of the existence of the Government's lien at the time he took his assignment.

I conclude, therefore, that in cause 640–D, the Continental Illinois National Bank & Trust Company must prevail over the Government and Drake; that in 46–D, Albers has a first lien on 180 shares of the stock of the Illinois Joint Stock Land Bank; that when and if his lien is discharged, the remainder, if any, will be payable upon the lien of the United States Government; that Trenchard's claim is invalid as against the United States; that the latter has a first lien upon the 70 shares of stock assigned to Trenchard, subsequent to the attachment of the lien of the United States, and that the dividends deposited in court upon said 70 shares, must be delivered to the United States Government; that Drake as receiver has no lien upon any of said shares of stock except subject first to the claim of Albers as receiver for the Moore State Bank and second, to the lien of the United States. In 25–D the lien of the Government is superior to the rights of Drake as receiver and plaintiffs' complaint must be dismissed for want of equity.

All the parties in 46–D have stipulated that the decree to be entered by this court shall determine the right, title and interests of the several parties in and to the 250

shares of stock in the Illinois Joint Stock Land Bank of Monticello, Illinois, and the dividends declared and hereafter to be declared upon the same. Accordingly the decree shall comply with such stipulation, and fix, determine, preserve and continue the respective interests, titles and liens of the respective parties in and to said stock and dividends thereon to be hereafter declared.

The foregoing will be included in my findings of fact and conclusions of law.

The costs in 46–D shall be taxed against and paid from the fund deposited in this court. The costs in 25–D shall be assessed against the plaintiffs, payable so far as Drake is concerned, in due course of administration. The costs in 640–D shall be assessed and ·taxed against the fund held by the receiver.

Proper decree may be submitted.