## CITIZENS STATE BANK OF BARSTOW, TEX., v. VIDAL, Collector of Internal Revenue, et al.

### No. 2076.

Circuit Court of Appeals, Tenth Circuit.

July 19, 1940.

William L. Kerr, of Pecos, Tex. (H. C. Buchly, of Roswell, N. M., and W. W. Hubbard, of Pecos, Tex., on the briefs), for appellant.

L. W. Post, Sp. Asst. to Atty. Gen., for appellees.

Before PHILLIPS and BRATTON, Circuit Judges, and MURRAH, District Judge.

MURRAH, District Judge.

The Magnolia Petroleum Company, a corporation,[1] appropriately filed its bill of interpleader,[2] acknowledged its debt to the

---

[1] Hereinafter called Magnolia.
[2] Under authority of Acts of Congress of date January 20, 1936, Chapter 13, Section 1, 49 Stat. 1096, 28 U.S.C.A. § 41 (26).

Montgomery Transportation Company, Inc.,[3] for work, labor, and materials furnished to it by Montgomery, deposited the debt, in the sum of $5,151.49, in the Registry of the Court and asked to be discharged. All parties defendant, including Appellant and Appellees, answered, claiming prior and superior rights to the fund. Appellee, S. P. Vidal, Collector of Internal Revenue for the District of New Mexico,[4] claims the fund in satisfaction of a deficiency assessment for income tax in the sum of $4,472.13, with penalties, for taxes for the year of 1936, due the United States Government. To perfect the said lien, the Collector filed notice of the same in the office of the Clerk of the United States District Court at Santa Fe, New Mexico, on December 13, 1938; in the office of the County Clerk of Lea County, at Lovington, New Mexico, (the domicile of Montgomery), on December 14, 1938; in the office of the County Clerk of Eddy County, State of New Mexico, at Carlsbad, New Mexico, (where part of the work was performed and material furnished), on March 13, 1938; in the office of the Clerk of the United States District Court for the Western District of Texas, at Pecos, Texas, on December 16, 1938, and in the office of the County Clerk of Winkler County, at Kermit, Texas, (where part of the work was performed and material furnished), on December 13, 1938, as provided by applicable statutes.[5]

The warrant for distraint and notice of levy was served upon Magnolia June 16, 1939, based upon a deficiency income tax assessment against Montgomery. Appellant, Citizens State Bank of Barstow, Tex-

as,[6] made claim to the fund by virtue of written assignments, executed and delivered to it by Montgomery, for which it paid a valuable consideration, without actual notice of the filing of notice by the Collector, and which said assignments covered work in Texas and New Mexico for and on behalf of Magnolia, prior to the date warrant for distraint and notice of levy was served upon the Magnolia, but after the filing of the notice of the lien aforesaid.

The fund, in question, represents the payment of a debt from the Magnolia to Montgomery for work, labor and materials furnished, evidence of which was assigned to the Bank in the manner aforesaid and the sole question presented here is the priority of the claim of the Collector and the Bank.

The trial court held that the laborers and materialmen had first claim to the fund; that the Collector of Internal Revenue had second claim to the fund; that the Bank had third claim to the fund. The Bank appeals "only from that portion of the said judgment which denies its priority to the claim of the Collector." The facts are agreed and are correctly set forth in the Court's findings. They evidence the following material facts: Montgomery Transportation Company, Inc., a New Mexico Corporation, was engaged in what might be termed oil field work; was employed and did perform labor and furnish materials in Texas and New Mexico for the Magnolia. To obtain money with which to meet current obligations, meet its payroll and operating expenses, Montgomery carried its itemized statements of work performed and material furnished, approved by Magnolia, to the Bank and for a cash

[3] Hereinafter called Montgomery.

[4] Hereinafter called Collector.

[5] Section 3186 of the Revised Statutes of the United States, as amended by Section 613 of the Revenue Act of 1928, Act of May 29, 1928, 45 Stat. 875 and Section 509 of the Revenue Act of 1934, Act of May 10, 1934, 48 Stat. 757.

26 U.S.C.A.Int.Rev.Code, § 3672, which reads in part as follows:

Validity against Mortgagees, Pledgees, Purchasers, and Judgment Creditors.

"(a) Invalidity of lien without notice. Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(1) Under State or Territorial laws. In accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the

State or Territory has by law provided for the filing of such notice; or

"(2) With Clerk of District Court. In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State or Territory has not by law provided for the filing of such notice; or

"(3) With Clerk of District Court of the United States for the District of Columbia. In the office of the clerk of the District Court of the United States for the District of Columbia, if the property subject to the lien is situated in the District of Columbia."

[6] A banking corporation organized under the laws of the State of Texas, and doing business in Barstow, Ward County, Texas and hereinafter called Bank.

consideration transferred and assigned to the Bank the itemized statements of money due and to become due thereunder. It was understood between the Bank, the Magnolia and Montgomery that from the amount due Montgomery from Magnolia there would be deducted the purchase price of Magnolia Petroleum products purchased from the Magnolia by Montgomery, in the operation of its business, and the net amount due after deductions, from time to time, would be retained by the Bank and the amount so retained credited in payment of the written assignments on due date. This course of dealing continued from the year of 1936 until about the 16th of June, 1939, but the assignments in question were for May 1, 13, 16, 22, 31, June 6, 12 and 14, 1939. At that time the assignments aggregated $13,637.42 for work; labor and materials furnished Magnolia by Montgomery, but after deducting the credits for petroleum products furnished by Magnolia to Montgomery there remained the sum now deposited in the Registry of the Court by Magnolia.

On June 16, 1939, the Collector caused to be served on the Magnolia notice of levy and warrant of distraint, making demand upon Magnolia "for the amount now owing from you to the said Montgomery Transportation Company, Inc.", which precipitated the bill of interpleader. The assignments from the Montgomery to the Bank are valid, in good faith and made in the regular course of business and the Bank had no actual knowledge of the income tax delinquency or notice of the filing of the tax lien.

During the pendency of the suit, Montgomery was adjudged a Bankrupt and the Trustee in Bankruptcy was substituted party defendant and made claim to the fund, contending it should be distributed through bankruptcy, but the assignments to the Bank and the notice of tax lien having been made and filed more than four months prior to ad-

judication of bankruptcy, it was decreed that the Trustee in Bankruptcy take nothing.

In the last analysis the sole question in this appeal is whether or not the filing of the notice of a tax lien by the Collector, in the manner established by these facts, gave the Collector a prior and superior lien to the Bank, as assignee of the taxpayer. This is the controlling question. The question turns on the construction of the applicable provisions of the Internal Revenue Code,[7] which provides for a lien in behalf of the Government for unpaid taxes, the scope of the lien and the manner of its enforcement.[8]

The question presented may be considered under two propositions. First, is the fund against which the lien is sought to be enforced "property or rights to property, whether real or personal, belonging to such person (taxpayer)", within the context and meaning of the statute?[9]

A claim for work, labor and material furnished is evidence of a debt and a chose in action; it is so treated by the parties here. Is it "property or rights to property"? If it is not "property" within the meaning of the Act, then no lien can attach; if it is "property" within the meaning of the Act then the lien did attach from the date the assessment list was received in the office of the Collector of Internal Revenue asserting the lien, provided notice of the said lien covering the tax assessment was filed as provided by the Act,[10] subject to the prior and intervening rights of adverse claimants.[11]

The statute covering collection of taxes is broad and comprehensive and Congress intended to subject all of a taxpayer's property, except that specifically exempt to the payment of taxes.[12] "Property" is a word of very broad meaning and when used without qualification, may reasonably be construed to include obliga-

[7] Title 26 U.S.C.A.Int.Rev.Code §§ 3670, 3671 and 3672 Revised Statutes 3186, as amended.

[8] Cannon v. Nicholas, Collector of Internal Revenue, 10 Cir., 80 F.2d 934.

[9] Title 26 U.S.C.A.Int.Rev.Code, § 3670, 53 Stat. 448, which reads as follows:

"Property Subject to Lien. If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

[10] United States v. Rosenfield et al., D. C., 26 F.Supp. 433.

[11] Exchange National Bank of Tulsa v. Davy et al., D.C., 13 F.Supp. 226.

[12] Cannon v. Nicholas, Collector of Internal Revenue, supra.

tions, rights and other intangibles, as well as physical things.[13] "Property" within the tax laws should not be given a narrow or technical meaning.[14]

■ The evidence of debt for labor, work and materials furnished was subject to ownership, (the Bank claims ownership); it was subject to transfer, (it was transferred), and exclusive possession and enjoyment and may be brought within the dominion and control of a court, through some recognized process (it is the subject matter of the controversy here). Under well recognized authority these are the essential ingredients of "property" where value is the test.[15]

■ The claim which has now ripened into the fund deposited into the Registry of this Court is "property or rights to property," although intangible in character. Appellant cites United States v. Western Union Telegraph Company,[16] as authority that a lien for taxes on "property or rights to property" contemplates a lien on tangible property only. An examination of the facts in the Western Union Telegraph Company case clearly indicates that the rights of the parties to the intangible property sought to be taxed were fixed long prior to attachment of the tax lien of the United States. There the Western Union Telegraph Company became obligated to pay to the stockholders of the Northwestern Telegraph Company certain fixed profits and the stockholders of the latter company were the third party beneficiaries to the property and the Northwestern Telegraph Company did not own, possess, or control the property at the time the tax lien was sought to be enforced against it. While in the instant case the claim of the Bank to the fund in question accrued subsequent to the filing of the tax lien against the taxpayer.

■ Appellant does not contend that it comes within the "security exemption."[17] Conceding that appellant is a "mortgagee, pledgee, purchaser or judgment creditor," and therefore entitled to the protective provisions of subsection (a), 26 U.S.C.A. Int. Rev.Code, § 3672, it is argued that the transitory situs of the chose in action renders nugatory the notice of filing of the tax lien, either at the domicile of the owner, which is Lea County, New Mexico, or in Winkler County, Texas, and Eddy County, New Mexico, where the work was performed and materials furnished and did not charge the Bank with notice, as contemplated by the protective provisions of the Act. We are, thereby, asked to decide the situs of the "property", or when translated into the language of the Act, the place where "situated". In our view, it is unnecessary for us to decide the situs of the "property", or whether or not the laws of the State of Texas or New Mexico provide for the filing of the notice of tax lien against "property" falling within this classification. If this "property" does not have a situs in Texas or New Mexico, or either of them, as contemplated by the applicable laws of the states, the disjunctive provisions of subdivision (a) 2, Title 26 U.S.C.A. Int. Rev.Code § 3672, provide for the filing of the notice with the Court Clerk of the United States District Court, where the "property" is situated. Therefore, in December, 1938, when the notice of the tax lien was filed both with the United States Court Clerk for the Western District of Texas, and the United States Court Clerk for the District of New Mexico, the "property" was situated either at the domicile of Montgomery in Lea County, New Mexico, or the place where the work was performed and materials furnished, in Winkler County, Texas, and Eddy County, New Mexico.

Out of an abundance of precaution the Collector filed notice of the lien at the domicile of the taxpayer and where the work was performed and materials furnished. It is significant to note that at that time the equities of the Bank had not attached, because evidence of the fund had not been assigned. The Collector met every requirement of the Act when on December 21, 1938, after notice and demand for payment and refusal to pay the tax assessments, he caused the same to be recorded in the offices of the United States District Court for the District of New Mexico; the County Clerk of Lea County, New Mexico;

---

[13] Fidelity & Deposit Co. of Maryland v. Arenz, 290 U.S. 66, 54 S.Ct. 16, 78 L. Ed. 176; Matter of Dunfee, 219 N.Y. 188, 114 N.E. 52; Gaddy v. Witt, Tex.Civ. App., 142 S.W. 926.

[14] Commissioner of Internal Revenue v. Stephens-Adamson Mfg. Co., 7 Cir., 51 F.2d 681.

[15] Gleason v. Thaw, 236 U.S. 558, 35 S. Ct. 287, 59 L.Ed. 717.

[16] 2 Cir., 50 F.2d 102.

[17] 26 U.S.C.A., Int.Rev.Code, sub-section (b) of Section 3672.

the United States District Court for the Western District of Texas and the County Clerk at Winkler County, Texas.

The tax lien upon all the "property and rights to property" of Montgomery, including the fund, in question, became effective as of the date upon which the assessment list, signed by the Commissioner of Internal Revenue, covering the assessments was received in the office of the Collector of the District of New Mexico and became a valid lien against the claims of Montgomery for work, labor and materials furnished for Magnolia. They were thereafter assigned and transferred to the Bank, subject to the prior and subsisting lien of the United States, under Title 26, U.S. C.A. Int.Rev.Code, §§ 3670, 3671 and 3672, Revised Statutes, Section 3186.[18]

The judgment is affirmed.

[18] Equitable Life Assurance Society of the United States v. Moore et al., D.C., 29 F.Supp. 179; United States v. Rosenfield et al., supra.