**752**

256 So.2d 179

In re STATE of Alabama

v.

**GULF OIL CORPORATION.**
Ex parte State of Alabama.

6 Div. 874.

Supreme Court of Alabama.

Dec. 9, 1971.

Rehearing Denied Jan. 13, 1972.

William J. Baxley, Atty. Gen., Willard W. Livingston, Counsel, Dept. of Revenue, and Asst. Atty. Gen., William H. Burton, Asst. Counsel, Dept. of Revenue, and Asst. Atty. Gen., for petitioner.

Douglas Arant and William L. Hinds, Jr., Birmingham, for respondent.

PER CURIAM:

Upon further consideration the court is of the opinion that the writ heretofore issued should be quashed.

HEFLIN, C. J., and COLEMAN, HARWOOD, BLOODWORTH and MADDOX, JJ., concur.

LAWSON, J., would affirm Court of Civil Appeals.

MERRILL and McCALL, JJ., dissent.

HEFLIN, Chief Justice (concurring in the quashing of the writ):

In concurring in the action of this Court in quashing the writ, it is my position that the opinion of the Court of Civil Appeals, 256 So.2d 172 is correct.

LAWSON, Justice (concurring specially):

We granted the State's petition for writ of certiorari because after preliminary consideration we concluded that there was a probability of merit in the petition. The petition was timely filed after an application for rehearing had been overruled in the Court of Civil Appeals. The petition was accompanied by a brief pointing out and arguing the points sought to be revised or corrected.—Supreme Court Rule 39. Consequently I cannot understand the court's action in quashing the writ.

After oral argument and further consideration of the briefs filed by the parties, I am of the opinion that the result reached in the opinion of the Court of Civil Appeals is correct. I therefore would affirm the judgment of the Court of Civil Appeals.

McCALL, Justice (dissenting):

The decision of the Court of Civil Appeals holds that no taxable gain or income resulted to the taxpayer in the sale of its Citronelle oil field to Bart B. Chamberlain and George H. Jett (the Chamberlain group) by reason of the latter's payment of $1,500,000 for Gulf's release from a pending suit filed against it by Gerald B. Waldron under the Clayton Anti-trust Act, because the release resulted in the cancellation of a purely "contingent" liability so far as Gulf was concerned.

I respectfully dissent from the decision of the majority, because the State does not seek to tax the amount paid by the Chamberlain group to Waldron as income resulting from the cancellation of a debt or obligation owing from Gulf to Waldron, but as a part of the consideration demanded and received by Gulf for the sale of the Citronelle oil field to the Chamberlain group. In my opinion Gulf derived taxable gain both from the business carried on by it with the Chamberlain group and for it by that group with Waldron. The Court of Civil Appeals found that the Chamberlain group had a desire to buy the Citronelle oil fields from Gulf. It also found that Gulf had been attempting to persuade Waldron to dismiss it from his lawsuit, and that the Chamberlain group's negotiations resulted in Gulf's agreeing to sell the properties to the group for $6,750,000, provided it was able to obtain the release from Waldron's suit. The Chamberlain group "accepted this condition and obtained Gulf's release from Waldron's anti-trust suit by paying to Waldron $1,500,000." The release consisted of Waldron's motion to dismiss Gulf from the lawsuit, a "Covenant Not to Sue" on the part of Waldron, and an "Indemnification Agreement" in favor of Gulf.

When Gulf agreed to sell to the Chamberlain group for $6,750,000 and imposed the condition that the vendee obtain a release of Gulf from Waldron's suit, the requirement of the release was a part of the

consideration for the sale moving in favor of Gulf.

"A test of good consideration for a contract is whether the promisee at the instance of the promisor has done, forborne or undertaken to do anything real, or whether he has suffered any detriment, or whether in return for the promise he has done something he was not bound to do, or has promised to do some act or to abstain from doing something. * * *" Roberts v. Lindsey, 242 Ala. 522, 525, 7 So.2d 82, 84; Russell v. Russell, 270 Ala. 662, 668, 120 So.2d 733.

Under the agreement of sale the Chamberlain group was as much bound to obtain the release as it was to pay $6,750,000.

The next question is whether the release, a part of the consideration, constitutes "gross income." Under Tit. 51, § 384, Code of Alabama, 1940, as amended, the term "gross income,"

"* * * (1) Includes gains, profits and income derived from salaries, wages or compensation for personal services of whatever kind, or in whatever form paid, including the salaries, income, fees and other compensation of state, county and municipal officers and employees, or from professions, vocations, trades, business, commerce or sales, or dealings in property whether real or personal, growing out of ownership or use of or interest in such property; also from interest, royalties, rents, dividends, securities or transactions of any business carried on for gain or profit and the income derived from any source whatever, including any income not exempted under this chapter and against which income there is no provision for a tax. * * *" (Italics supplied)

Title 51, § 380(a), Code of Alabama, 1940, Recompiled 1958, provides that upon the sale of property, the entire amount of gain, determined under § 379 of Tit. 51, shall be recognized, unless subject to one of the tax free exchanges contained in the remainder of § 380, which are not applicable. Title 51, § 379(a) defines a gain from the sale of property as the excess of the *amount realized* therefrom over the adjusted basis as provided in § 378. Section 379 (b) states:

"* * * The *amount realized* from the sale or other disposition of property shall be the sum of any money received *plus the fair and reasonable market value of the property (other than money) received.* * * *" (Italics supplied)

Therefore, for the release to constitute gain under § 384, it must be a part of the amount realized by Gulf from the sale of the Citronelle interests. To be an element of the amount realized, the release must satisfy the statutory requirement that it be "property other than money."

In determining whether the release is property within the meaning of § 379(b), it must be kept in mind that the term property, as used in taxing statutes, should not be given a narrow or technical meaning. Citizens State Bank of Barstow, Tex. v. Vidal, 10th Cir., 114 F.2d 380; Commissioner of Int. Rev. v. Stephens-Adamson Mfg. Co., 7th Cir., 51 F.2d 681; Investment & Securities Co. v. Robbins, D.C., 49 F.Supp. 620, aff'd sub nom. Investment & Securities Co. v. United States, 9th Cir., 140 F.2d 894. The word "property" has a broad meaning and when used without qualification may be reasonably construed to include obligations, rights, and other intangibles as well as physical things. Jones v. Corbyn, 10th Cir., 186 F.2d 450; Citizens State Bank of Barstow, Tex. v. Vidal, 10th Cir., 114 F.2d 380; United States v. Graham, D.C., 96 F.Supp. 318, aff'd sub nom. State of Cal. v. United States, 9th Cir., 195 F.2d 530, cert. denied, 344 U.S. 831, 73 S.Ct. 36, 97 L.Ed. 647.

A covenant not to sue operates as a release. Flinn v. Carter, 59 Ala. 364, 366; 45 Am.Jur., Release, § 3, p. 676; 76 C.J.S. Release § 44, p. 675. A release is a contract, and must be supported by a lawful and valuable consideration, Hamilton v. Edmundson, 235 Ala. 97, 177 So. 743; Na-

tional Life and Accident Ins. Co. v. Karasek, 240 Ala. 660, 666, 200 So. 873, as is also the case with a covenant not to sue. 76 C.J.S. Release § 3, p. 630. As in the case of general contract law, a release contract may be the subject of a tripartite agreement. A consideration for a release moving from a third person on behalf of the releasee to the releasor is as adequate as a consideration moving directly from the releasee to the releasor. 76 C.J.S. Release § 12, p. 636.

A valid contract has been held to be property. See Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Monolith Portland Midwest Co. v. Reconstruction Finance Corp., D.C., 128 F.Supp. 824; Dept. of Financial Institutions v. Holt, 231 Ind. 293, 108 N.E.2d 629. Professor Corbin notes that when a court says a contract right is property, it is using the word in the sense that a contract is the subject matter of property relations. Corbin on Contracts, Vol. 4, § 860, at p. 418. The contract right in the instant case is the right of Gulf not to be subjected to suit by Waldron, and the corresponding right to sue Waldron for damages in the event he breaches the covenant not to sue. It appears to me that these rights in Gulf constitute property within the meaning of § 379(b), supra, because the rights were sold and Gulf enjoys the ownership of these rights.

Having analyzed the pertinent prerequisites to the transaction's becoming a taxable gain as a part of a sale or exchange of property, it is my opinion that the release of Gulf from the Waldron suit, to the extent of its fair and reasonable market value, is includable in Gulf's gross income for the tax year of 1959.

The determination of the fair and reasonable market value of a lawsuit is a difficult matter because each suit is unique and the release may be given only once. There are many variables the parties must consider, weigh and evaluate in reaching a price for the release. The difficulty is compounded when, as here, a third party negotiates and furnishes the consideration for the release. Nonetheless, the Chamberlain group and Waldron negotiated at arms length, because the group had a vested interest in not paying more than the value of the suit which increased its total cost of the Citronelle properties.

Although not directly in point, the following cases are pertinent. They hold that the price paid for personal property is some evidence of its value, Southern Ry. Co. v. Bailey, 220 Ala. 385, 125 So. 403; Warrant Warehouse Co. v. Cook, 209 Ala. 60, 95 So. 282. If this test of value is valid for tangible property, there is no reason why it should not be applied to the intangible here involved. The Chamberlain group had every incentive to procure the release as cheaply as possible and Waldron had every incentive to obtain as much as possible. There was some evidence therefore as to the fair and reasonable market value of the release as taxable gain to Gulf. For the reasons stated, I feel the case should be reversed and the cause remanded to the trial court for a retrial in conformity with the views expressed and an ascertainment of the fair and reasonable market value of the release from Waldron to Gulf.

MERRILL, J., concurs.